**Michael A. GRIM, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 33A01–0212–CR–479.**

Court of Appeals of Indiana.

Oct. 23, 2003.

Amy K. Noe, Arnold & Noe, LLP, Richmond, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Appellant, Michael Grim, was convicted of Carrying a Handgun Without a License, a Class C felony,[1] Possession of a Narcotic Drug, a Class C felony,[2] Possession of Two or More Chemical Reagents or Precursors With Intent to Manufacture, a Class D felony,[3] Possession of Paraphernalia, a Class A misdemeanor,[4] and Unlawful Use of a Police Radio, a Class B misdemeanor.[5] He challenges the sufficiency of the evidence to support the convictions.

We affirm in part and reverse in part.

On May 29, 2002, Detective Trent Brewster of the Henry County Sheriff's Department was contacted by Randy Ratliff of the Greenfield Police Department, who advised him that at around 5:00 a.m. that morning, two individuals, one of whom was later identified from surveillance tapes as Grim, had each purchased three boxes of ninety-six count Equate brand pseudoephedrine at a Wal–Mart store located in Greenfield and that they were seen leaving together in a white, four-door vehicle.[6] The license plate number identified the car as being registered to Tammy and Howard Stover of New Castle, Indiana, which is located in Henry County.

That evening, Detective Brewster, along with Detective Aaron Strong of the New Castle Police Department, began surveillance of the house at the address where the car was registered. At approximately 9:40 p.m., the detectives observed a white, four-door vehicle, with the same license plate number as that identified leaving the Wal–Mart in Greenfield, arrive at the home. The detectives watched as several people were seen entering and exiting the vehicle. A short time later, several people left the residence in the car and Detectives Brewster and Strong followed the vehicle to a place referred to as Point Pantry. The detectives were able to identify Grim as a passenger in the vehicle. The detectives then followed the vehicle to another residence, where after several hours, they ended their surveillance.

On May 30, 2002, Detective Brewster learned that there was an active warrant

---

1. Ind.Code § 35–47–2–1 (Burns Code Ed. Repl.1998); Ind.Code § 35–47–2–23(c) (Burns Code Ed. Repl.1998).

2. Ind.Code § 35–48–4–6(a)(b)(1)(B) (Burns Code Ed. Supp.2002).

3. Ind.Code § 35–48–4–14.5(c)(2) (Burns Code Ed. Supp.2002).

4. Ind.Code § 35–48–4–8.3(c)(1) (Burns Code Ed. Repl.1998).

5. Ind.Code § 35–44–3–12 (Burns Code Ed. Repl.1998).

6. Because pseudoephedrine is commonly used to manufacture methamphetamine, Wal–Mart has a policy limiting to three the quantity an individual may purchase. After observing the two individuals make separate purchases of three boxes of Equate brand pseudoephedrine and then leave in the same vehicle, Wal–Mart notified the Greenfield Police Department of the suspicious activity.

for Grim's arrest. The following day, May 31, 2002, an anonymous informant advised the police that Grim was to arrive at a Kroger parking lot in five to ten minutes. Detectives Brewster and Strong, along with two other detectives, went to the Kroger store where they observed the same white, four-door vehicle pull into the parking lot. Detective Strong advised uniformed officers of the New Castle Police Department to stand by in the area because they were trying to locate an individual with an active warrant. The detectives watched as an unknown individual approached the car and after a brief conversation, the unknown individual and the driver of the car went inside the Kroger. The detectives could see Grim sitting in the passenger seat of the car and observed him for approximately twenty to thirty minutes. After the driver returned to the car, she and Grim proceeded to leave, but were stopped behind the Kroger by Sgt. James Nicholson and Officer David Pierce of the New Castle Police Department. Grim and the driver were ordered out the vehicle, placed under arrest, and then transported to the Henry County jail.

Prior to the car being towed, Detective Strong performed an inventory search as Detective Brewster filled out the inventory report. During the inventory search, the detectives found a Uniden Bearcat scanner on the dashboard and a moneybag containing an unknown person's identification card along with a card listing several different police frequencies under the driver's seat. The detectives further found .22 caliber bullets and shell casings, two boxes of ammunition, and a baggie containing ammunition in plain view in the middle console between the driver and passenger seats. With the passenger door open, the detectives observed a handgun, which was partially sticking out from under the passenger seat between the passenger seat and the doorjamb. A second handgun was found sticking out from under the left side of the passenger seat. Detective Strong also saw a strap sticking out from under the passenger seat which he thought could be a shoulder holster. When he pulled it out, he discovered that it was a waistband carrying case. Inside the case he found a clear plastic baggie containing "a whitish yellow substance," which was later determined to be 1.98 grams of methamphetamine and pseudoephedrine. The detectives also found in the console area of the vehicle a glass pipe with residue, which they identified as an instrument primarily used to consume narcotics. Also in the console area were a torch and butane fuel, which the detectives testified can be used to heat and help consume controlled substances. A shortened, green drinking straw with residue was found under the driver's seat. The residue on the straw was later determined to be methamphetamine and pseudoephedrine. On the floorboard in front of the passenger seat, Detective Strong found a bottle of seventy percent isopropyl alcohol.

In the middle of the back seat of the vehicle, Detective Strong found a small yellow box which contained two lithium batteries and coffee filters, which the detectives knew to be commonly used in manufacturing methamphetamine. In the "trunk area" of the vehicle, which was accessible from the back seat, Detective Strong found two Wal–Mart bags and a total of seventeen boxes of Equate brand pseudoephedrine, of which fifteen were ninety-six count packages and two were twenty-four count packages. Near the pseudoephedrine, Detective Strong found four containers of table salt, which he was aware could be used in manufacturing methamphetamine.

The State charged Grim with Count I, possession of a narcotic drug, Count II, possession of two or more chemical reag-

ents or precursors with intent to manufacture, Count III, carrying a handgun without a license, Count IV, possession of paraphernalia, and Count V, unlawful use of a police radio. On June 12, 2002, the State filed a petition to have the charge of carrying a handgun without a license enhanced to a Class C felony based upon the fact that Grim had two prior felony convictions within fifteen years of the date of the present offense. *See* I.C. § 35–47–2–23(c)(2)(B). Following a jury trial on September 23 and 24, 2002, Grim was convicted upon all counts. Grim then admitted to having two prior felony convictions which served to enhance the carrying charge to a Class C felony. Upon appeal, Grim argues that there was insufficient evidence to support each of his convictions.

When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the credibility of witnesses. *Lycan v. State*, 671 N.E.2d 447, 456 (Ind.Ct.App.1996). We consider only the evidence which is favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *VanMatre v. State*, 714 N.E.2d 655, 658 (Ind.Ct.App. 1999).

*Carrying a Handgun Without a License*

We first consider Grim's claim that the evidence was insufficient to support his conviction for carrying a handgun without a license. Indiana Code § 35–47–2–1 provides that "a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." Here, the State alleged that, "on or about May 31, 2002, in Henry County, State of Indiana, Michael A. Grim did carry a handgun *in a vehicle*, without a license issued under I.C. 35–47–2 in Michael A. Grim's possession. . . ." Appendix at 102 (emphasis supplied). Relying upon *Walker v. State*, 631 N.E.2d 1 (Ind.Ct.App. 1994), Grim argues that because the statute requires a person to be *carrying*, rather than *possessing* a handgun, constructive possession is not an appropriate analysis to find a defendant guilty of carrying a handgun without a license.

In *D.C.C. v. State*, 695 N.E.2d 1015, 1016 n. 1 (Ind.Ct.App.1998), a panel of this court recognized that there has been disagreement among panels of this court concerning whether constructive possession may serve as a basis for finding that a defendant was "carrying" a handgun. *Compare Klopfenstein v. State*, 439 N.E.2d 1181 (Ind.Ct.App.1982) (constructive possession sufficient), *with Walker*, 631 N.E.2d 1 (constructive possession is insufficient because the crime is not *possessing* an unlicensed handgun, but having the unlicensed handgun on one's person). Be that as it may, our Supreme Court has made clear that constructive possession is applicable to handgun cases. *See Henderson v. State*, 715 N.E.2d 833 (Ind. 1999); *Hoffman v. State*, 520 N.E.2d 436 (Ind.1988); *Taylor v. State*, 482 N.E.2d 259 (Ind.1985); *Woods v. State*, 471 N.E.2d 691 (Ind.1984). *See also State v. Hill*, 688 N.E.2d 1280 (Ind.Ct.App.1997), *trans. denied.*

It is accurate to say that the mere presence of a passenger in a car in which a handgun is being transported is insufficient to find the passenger guilty of carrying a handgun in a vehicle or on or

about his person. *Henderson*, 715 N.E.2d at 836; *Klopfenstein*, 439 N.E.2d at 1185. However, this does not mean that a passenger in a car is precluded from being prosecuted for the handgun offense. To convict a defendant of carrying a handgun in a vehicle, the State must present evidence that a handgun was found in a vehicle and that the defendant *had control of either the weapon* or of the vehicle with knowledge of the weapon's presence. *Woods*, 471 N.E.2d at 693 (exclusive possession of vehicle); *Klopfenstein*, 439 N.E.2d at 1184 (defendant was driver of vehicle with three other passengers). In addition, it must be established that there was an intention to convey or transport the weapon. *Klopfenstein*, 439 N.E.2d at 1184.

■ To prove that the defendant had control of the weapon, the State may present evidence of actual or constructive possession. *Henderson*, 715 N.E.2d at 835. Actual possession occurs when a person has direct physical control over contraband. *Id.* Constructive possession occurs when an individual has "the intent and capability to maintain dominion and control over the [contraband]." *Id.* Suggesting that knowledge is a key element in proving intent, our Supreme Court has repeatedly enunciated the following rule:

"When constructive possession is asserted, the State must demonstrate the defendant's knowledge of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premise [sic] containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." *Woods*, 471 N.E.2d at 694.

Proof of dominion and control over contraband has been found through a variety of means: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of contraband with other items owned by the defendant. *Henderson*, 715 N.E.2d at 836. To establish that the defendant had the capability to maintain dominion and control over the contraband, the State must demonstrate that the defendant was able to reduce the contraband to his personal possession. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999); *Armour v. State*, 762 N.E.2d 208, 216 (Ind.Ct.App.2002), *trans. denied.*

■ Here, we are presented with a non-exclusive dominion case. The evidence presented by the State was that two handguns were found in the vehicle in which Grim was a passenger, both under the passenger seat where Grim had been sitting. With the passenger door open, one of handguns was visible from outside the car, with three to four inches of the handle of the gun sticking out from under the passenger seat, between the seat and the doorjamb. The second handgun was found protruding from under the left side of the passenger seat. Also found in plain view in the middle console of the vehicle were bullets and shell casings, two boxes of ammunition, and a baggie containing ammunition. Grim's close proximity to the handguns, in addition to the fact that one of the handguns was plainly visible when the passenger door was open and that there were bullets and ammunition in plain view, is sufficient circumstantial evidence from which the jury could have concluded beyond a reasonable doubt that Grim constructively possessed the handgun and was therefore guilty of carrying a handgun in a vehicle without a license.[7]

7. In this regard, the facts of this case are to be distinguished from the facts present in

Grim also challenges the sufficiency of the evidence supporting each of his other convictions, arguing as well that the evidence was insufficient to prove that he was in constructive possession of the contraband. The same constructive possession analysis set forth above is equally applicable in addressing Grim's other claims.

### Possession of a Narcotic Drug

In order to convict Grim of Count I, possession of a narcotic drug as a Class C felony, the State was required to prove that Grim (1) without a valid prescription, (2) knowingly or intentionally, (3) possessed methamphetamine, (4) while in possession of a firearm. *See* I.C. § 35–48–4–6. A conviction for possession of a narcotic drug may be supported by either actual or constructive possession. *Armour*, 762 N.E.2d at 216. As already noted, in order to prove constructive possession, the State must show that the defendant had the intent and capability to maintain dominion and control over the contraband. *See id.* The State must demonstrate the defendant's knowledge of the presence of the contraband to prove the intent element. *Id.* Where, as here, the defendant's possession of the premises where the contraband is discovered is non-exclusive, the defendant's knowledge of the presence of the contraband may be inferred from additional circumstances. *Id.* To prove that a defendant was capable of maintaining dominion and control, the State must demonstrate that the defendant was able to reduce the controlled substance to his personal possession. *Id.*

Detective Strong testified that after finding the second handgun under the passenger seat, he saw a strap sticking out from under the passenger seat which he believed could have been a shoulder holster. Upon pulling it out, Detective Strong discovered a waistband carrying case. Detective Strong opened the case and inside he found a baggie containing a whitish, yellow substance which was later determined to contain methamphetamine. That the methamphetamine was found under the passenger seat where Grim was sitting demonstrates that Grim could have reduced such substance to his personal possession. However, there is no evidence in the record which suggests that Grim knew that there was methamphetamine in the waistband carrying case located under the seat where he was sitting. The methamphetamine was not in plain view as it was inside a waistband carrying case concealed under the passenger seat. Further, while in the parking lot of the Kroger, four detectives observed Grim. None of the detectives, however, testified that Grim engaged in any furtive acts. Nor is there any indication that the waistband carrying case belonged to Grim. While Grim was in close proximity to the case containing the methamphetamine, such evidence alone does not prove that Grim knew of the presence of the methamphetamine, and thus, he cannot be said to have been in constructive possession thereof. *See Godar v. State*, 643 N.E.2d 12 (Ind.Ct.App. 1994), *trans. denied.* Therefore, we con-

*Walker v. State*, 631 N.E.2d 1 (Ind.Ct.App. 1994), in which the defendant was seated in the front passenger seat and the handgun was found between the rear seat and the portion of the trunk visible from inside the vehicle. Our case is also distinguishable from *Cole v. State*, 588 N.E.2d 1316 (Ind.Ct.App.1992), cited in *Walker* and in which the defendant was seated in the front passenger seat but the weapon was found on the driver's side of the backseat floorboard. If, however, *Walker* is read to hold that the concept of constructive possession may only be applied to a "possession" crime and may not be applied to a "carrying" offense, we decline to follow it. *See Henderson, supra*, which discussed constructive possession in the context of the crime of "carrying" a handgun in a vehicle.

clude that the evidence was insufficient to prove that Grim possessed a narcotic drug.

### Possession of Chemical Reagents or Precursors with Intent to Manufacture

To convict Grim of Count II, possession of chemical reagents or precursors with intent to manufacture controlled substances, the State was required to prove that Grim (1) possessed, (2) two or more chemical reagents or precursors, i.e. lithium metal and pseudoephedrine, (3) with the intent to manufacture methamphetamine. See I.C. § 35–48–4–14.5. In support of this charge, the State presented evidence that lithium batteries containing lithium metal were found in a yellow box in the backseat of the car, that Grim was observed purchasing pseudoephedrine two days prior to his arrest, and that there were a total of seventeen boxes of pseudoephedrine found in the "trunk area" of the car.

■ The evidence presented by the State demonstrates that Grim had the capability to maintain dominion and control of both the lithium metal, as it was located within his reach in the backseat of the car, and of the pseudoephedrine, which was also accessible from inside the vehicle. Further, it may be said that the evidence supports a finding that Grim knew of the presence of the pseudoephedrine given his purchase two days prior. Lacking, however, is evidence that Grim knew about the presence of the lithium batteries which were inside of the yellow box in the backseat. There is no evidence from which the jury could have inferred that Grim knew that the yellow box in the backseat contained lithium batteries. The State did not establish that Grim had a possessory interest in the vehicle or in the yellow box where the lithium batteries were concealed or that Grim had engaged in any furtive

acts. Grim's presence in the car and his proximity to the yellow box do not establish his knowledge of its contents. See Godar, 643 N.E.2d at 15. The evidence is therefore insufficient to support Grim's conviction for possession of two or more precursors with intent to manufacture.

### Possession of Paraphernalia

■ To convict Grim of Count IV, possession of paraphernalia, the State was required to prove that Grim (1) recklessly, (2) possessed, (3) a raw material, an instrument, a device, or other object, i.e. a glass pipe, (4) that is to be used primarily for (5) introducing into the person's body a controlled substance. See I.C. § 35–48–4–8.3. Again, Grim argues that there was insufficient evidence from which he could be found to have constructively possessed the glass pipe. Here, the detectives testified that the glass pipe was found in plain view in the middle console between the passenger and driver seats. This evidence is sufficient to establish that Grim knew of the presence of the contraband and could have easily asserted dominion and control over it.

Nevertheless, we conclude that the evidence presented by the State was insufficient to support Grim's conviction as we conclude that the State did not prove that Grim's possession was "reckless." A person engages in conduct "recklessly" if he "engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2 (Burns Code Ed. Repl.1998). In Vertner v. State, 793 N.E.2d 1148, 1155 (Ind.Ct. App.2003), a panel of this court sua sponte held that the evidence was insufficient to sustain Vertner's conviction because the State had failed to prove that the defendant's possession of paraphernalia was

"reckless." The court concluded that there was no evidence in the record of the harm which might result from possession of a crack pipe in one's pocket or that possession of a crack pipe showed the defendant's disregard of any such harm, or that having a crack pipe in one's pocket was a substantial deviation from acceptable standards of conduct. *Id.* at 1154.

Although the glass pipe was not on Grim's person, but rather was in plain view in the middle console of the car, the record is devoid of any evidence of the harm which might result from Grim's constructive possession of the glass pipe or that Grim was acting in total disregard of any such harm. As acknowledged by Chief Judge Brook in his concurring opinion in *Vertner,* "it is difficult to imagine a set of facts that would satisfy the elements of reckless possession of paraphernalia." *Id.* at 1155 (Brook, C.J., concurring). Indeed, it is the *use* of a glass pipe which might well result in harm, not mere possession. *Id.* at 1157. The State is required to prove all of the elements of a crime beyond a reasonable doubt, including the "reckless" culpability component for the crime of reckless possession of paraphernalia. We realize that this places a difficult burden upon the State, and thus, join Chief Judge Brook in urging the General Assembly to revisit and perhaps revise I.C. § 35–48–4–8.3(c). *See id.* at 1155.

### Unlawful Use of a Police Radio

In Count V, the State charged Grim with unlawful use of a police radio, specifically alleging that "Michael A. Grim did knowingly possess a police radio. . . ." Appendix at 102. Grim first argues that such does not describe a crime because the State must also prove that the defendant possessed the police radio while committing a crime, to further the commission of a crime, or to avoid detection by a law enforcement agency.[8] Grim, however, misreads the statute.

The crime of unlawful use of a police radio is defined in I.C. § 35–44–3–12, which provides:

"(a) A person who knowing or intentionally:

(1) possesses a police radio;

(2) transmits over a frequency assigned for police emergency purposes; or

(3) possesses or uses a police radio:

(A) while committing a crime;

(B) to further the commission of a crime; or

(C) to avoid detection by a law enforcement agency;

commits unlawful use of a police radio, a Class B misdemeanor."[9]

First, we note that the conduct which constitutes unlawful use of a police radio is listed in the disjunctive. Thus, a person commits the offense if he knowingly or intentionally possesses a police radio. I.C. § 35–44–3–12(a)(1). We further note that subsection (b) of the statute excepts certain entities and individuals from violation of subsection (a)(1) and (a)(2) of the statute. Thus, if an individual falls within

---

8. Grim also asserts that final instruction 2E defining the crime of unlawful use of a police radio was an incorrect statement of the law because it required the jury to find only that Grim knowingly possessed a police radio.

9. A "police radio" is defined as "a radio that is capable of sending or receiving signals transmitted on frequencies assigned by the Federal Communications Commission for police emergency purposes and that: (1) can be installed, maintained, or operated in a vehicle or (2) can be operated while it is being carried by an individual." I.C. § 35–44–3–12(c). Here, Grim does not claim that the Uniden Bearcat scanner which was found in the vehicle is not a police radio.

one of the categories listed in subsection (b), then such individual may only be guilty of the crime of unlawful use of a police radio if such individual possesses or uses the police radio for one of the purposes listed in subsection (a)(3). An individual who does not fit within a category listed in subsection (b) of the statute commits the crime of unlawful use of a police radio by merely being in possession of a police radio under subsection (a)(1). *See Wallman v. State,* 419 N.E.2d 1346, 1350 (Ind.Ct. App.1981) (finding under previous, similar version of statute, that statute is sufficiently clear and definite to prohibit, at the very least, possession of a police radio). Here, Grim does not claim that he falls within one of the categories listed in subsection (b). Thus, to convict Grim of Count V, unlawful use of a police radio, the State was required to prove only that Grim (1) knowingly or intentionally (2) possessed a police radio. *See* I.C. § 35–44–3–12(a)(1). The State was not, as argued by Grim, required to prove a set of circumstances listed under subsection (a)(3).

■ In the alternative, Grim argues that there was insufficient evidence to support a finding that he constructively possessed the police radio. We disagree. The State presented evidence that the police radio was found on the dashboard of the car, near the windshield. In addition to Detectives Stone and Brewster's testimony, several officers also present at the time Grim was arrested testified that the police radio was on the dashboard of the car and could be plainly seen. Grim's proximity to the police radio and the fact that it was in plain view, support the jury's finding that Grim was in constructive possession of the police radio.

### Conclusion

In summary, the State presented sufficient evidence to prove that Grim carried a handgun without a license and that he unlawfully "used" a police radio by being in constructive possession of one.[10] There was insufficient evidence to support Grim's convictions for possession of a narcotic drug, possession of two or more precursors with intent to manufacture, and reckless possession of paraphernalia; therefore those convictions are reversed. Because the reversal of these convictions is based upon insufficiency of evidence, double jeopardy precludes retrial. *Godar,* 643 N.E.2d at 15.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions that the trial court vacate the convictions for possession of a narcotic drug, possession of two or more precursors with intent to manufacture, and reckless possession of paraphernalia.

RILEY, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I believe that the evidence was sufficient to support Grim's convictions for possession of a narcotic drug and possession of chemical reagents or precursors with intent to manufacture, and therefore respectfully disagree with the majority's decision to reverse those convictions based on insufficient evidence.

Both convictions were obtained in part by application of the doctrine of construc-

10. One may question whether mere possession of a radio is to "use" it if it is not in a functioning mode but is merely capable of being used for its designed purpose by some additional act to be performed. Be that as it may, our General Assembly by its unambiguous choice of language has defined "possession" as "use."

tive possession. That doctrine applies in situations where the State seeks to prosecute for possession of contraband, but the contraband was not found in the defendant's "actual possession." *Goliday v. State,* 708 N.E.2d 4, 6 (Ind.1999). To support a conviction under this doctrine, the State must show "that the defendant had both the capability and the intent to maintain dominion and control over the contraband. Where control is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband." *White v. State,* 772 N.E.2d 408, 413 (Ind.2002).

The majority concedes that the containers in which the contraband was found were located near enough to Grim that he could have readily reduced them to his possession. Both containers lay in plain view, although only the strap of the waistband carrying case was protruding from beneath the seat on which Grim was sitting. The case for constructive possession comes up short, according to the majority, because Grim cannot be charged with knowing the containers' contents. I disagree.

The law of constructive possession requires courts to examine the totality of the circumstances (also called "additional circumstances", *id.*) to determine whether we may infer the defendant's knowledge of the presence of the contraband. In this case, Grim and another person with whom he eventually left the store were videotaped the previous day purchasing large quantities of pseudoephedrine in a Wal–Mart. Pseudoephedrine has a legitimate medicinal use. It is also used, however, in the illegal production of methamphetamine. In the latter context, the medication is classified as a precursor to the illegal production of methamphetamine. *See* I.C. § 35–48–4–14.5(a)(2). The quanti-

ty purchased is an indicator of the intended use. When purchased in the amount that Grim and his confederate purchased it at the Wal–Mart store, production of methamphetamine is indicated.

When Grim was stopped with a person the next day in the very same car, police found a large quantity of the aforementioned medication in the back seat. They found other items as well. They discovered a torch and a can of butane fuel protruding between the console and the seat in which Grim was sitting. Officer Aaron Strong, an investigator for the Drug Task Force of the New Castle Police Department, testified that such torches are used to help consume a controlled substance. They discovered a pipe that "could be used to introduce a controlled substance into a person's body." *Record* at 125. The pipe was laying on the console between the two front seats. They discovered a drinking straw under the driver's seat that was unusual in that it was only one-third to one-fourth as long as a normal drinking straw. According to Investigator Strong, "people cut these straws and they use them to introduce a controlled substance into their body by snorting it." *Id.* at 126. They found a bag containing salt. The bag was lying next to the sacks containing seventeen packages of pseudoephedrine medication. Investigator Strong testified that salt is used in the production of methamphetamine. Finally, they found a package of coffee filters in the yellow box containing the lithium batteries. Such coffee filters are "used at some point in filtering during a process for manufacturing methamphetamine." *Id.* at 135.

In summary, Grim traveled to a Wal–Mart the day before in the same car and was observed there purchasing an unusually large quantity of pseudoephedrine, and that a large quantity of that medication was found in the car when he was arrested

the next day. At the time of his arrest, there were several items laying in plain view in the car that are associated with the production of methamphetamine. Several additional items used in that process were found inside the vehicle but not in open view. In fact, considering all of the items that were found in the vehicle, it would not be stretching the point to characterize the car as a rolling methamphetamine lab. Those facts must be considered in evaluating the State's claim of constructive possession. *See, e.g., Iddings v. State,* 772 N.E.2d 1006 (Ind.Ct.App.2002), *trans. denied.* Considering the totality of circumstances, the forgoing facts constitute "additional circumstances" from which we may infer Grim's knowledge of the contents of the yellow box and the waistband carrying case. Thus, there was sufficient evidence to support his convictions of possession of a narcotic drug and possession of chemical reagents or precursors with intent to manufacture. I would affirm those convictions. I agree with the majority in all other respects.