**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jul 18 2012, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSEPH M. CLEARY**
Collignon & Dietrick
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| DEMARCO DAVIS, | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  82A01-1109-CR-454 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No.  82C01-1007-FB-841

**July 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Demarco Davis ("Davis") was convicted of Dealing in Cocaine, as a Class B felony[1]; Dealing in Marijuana, as a Class A misdemeanor[2]; and Maintaining a Common Nuisance, as a Class D felony[3]. He now appeals his conviction for Dealing in Cocaine.

We affirm.

## Issues

Demarco raises two issues for our review, which we restate as:

I.    Whether the trial court abused its discretion when it admitted into evidence testimony identifying a white powder as cocaine; and

II.    Whether there was sufficient evidence to support his conviction for Dealing in Cocaine.

## Facts and Procedural History

In July 2010, Davis resided at 920 Negley Avenue, Apartment A, in Evansville ("920 Negley"). The Joint Narcotics Task Force ("JTF"), a group of Evansville Police Department and Vanderburgh County Sheriff's Office detectives, conducted surveillance of 920 Negley and, on July 8, 2010, obtained a warrant to search the residence. Officers from the JTF executed the search warrant that day.

Upon entering the apartment, police found Davis in the apartment along with two other individuals, Richard Dulane and Candy Ingram ("Ingram"). Police arrested Davis and advised him of his Miranda rights. Davis orally waived his rights, told police that he had

---

[1] Ind. Code § 35-48-4-1(a)(2).

[2] I.C. § 35-48-4-10(a)(2).

[3] I.C. § 35-48-4-13(b).

moved into 920 Negley a couple of weeks prior to July 8, 2010, and that he shared the apartment with Ingram. A pat-down search of Davis yielded a small baggie with a substance Davis admitted was marijuana, a bundle of cash totaling around $2,345, and multiple cellular telephones. Davis admitted that the marijuana was his, but disclaimed any knowledge concerning any other illicit activities that may have occurred at the home.

The group of officers who served the warrant spread out through the apartment to search for evidence. One officer, Detective John Evans ("Detective Evans"), found a small black safe in the basement of the residence, in which were flakes of white powder and a set of scales with a white powdery residue on them. In the kitchen, Detective Cliff Simpson ("Detective Simpson") found a strainer with a white powdery residue, a gallon-size plastic bag with white powder in it, a digital scale, two bottles of MSM,[4] baking soda, a measuring cup with white powdery residue, an electric hand-mixer with a white powdery residue, and a butter knife with white powdery residue. The white powder in the plastic bag was later determined to be cocaine. Also found in the kitchen was a plastic bag with a green, leafy substance that was later determined to be marijuana.

One of the apartment's bedrooms was largely empty, though it contained a set of plastic drawers. Behind the set of drawers, detectives found a small box that contained a plastic bag and several pieces of silverware; the bag contained a small amount of white powder, and there was a white powdery residue on the silverware. The white powder in the bag was later determined to be cocaine. In another bedroom, detectives located a stack of

---

[4] MSM was, here, found in pill form, and is frequently used for promoting the health of cartilage and joints.

3

cash totaling around $3,000 resting on the floor behind a dresser.

On July 12, 2010, the State charged Davis with Dealing in Cocaine, Dealing in Marijuana, and Maintaining a Common Nuisance.

On June 29 and 30, 2011, a jury trial was conducted. During the trial, Davis objected on numerous occasions to testimony from police detectives that tended to identify the white residue found on many of the items as being cocaine residue; most witnesses testified that the residue could be identified as appearing to be a narcotic, but not cocaine. Detective Simpson, however, testified that certain powder he obtained during a search of the kitchen was cocaine; Davis objected and moved for a mistrial. The trial court denied the motion and ultimately permitted Detective Simpson to testify that based upon his training and experience, the powder had the characteristics of cocaine. At the conclusion of the trial, the jury found Davis guilty of all charges.

On August 19, 2011, the trial court entered judgments of conviction against Davis and sentenced him to twelve years imprisonment for Dealing in Cocaine, one year of imprisonment for Dealing in Marijuana, and two years imprisonment for Maintaining a Common Nuisance, with all of the sentences run concurrently for an aggregate term of twelve years imprisonment.

This appeal followed.

**Discussion and Decision**

<u>Admission of Evidence</u>

Davis purports that the trial court erred when it denied his motion for a mistrial. His

argument on appeal, however, is that Detective Simpson's testimony concerning his training and ability to differentiate cocaine from other narcotics was an insufficient foundation upon which to permit his opinion testimony that the white powder he found in the kitchen of 902 Negley was cocaine. Thus, while he contends that the trial court erred when it denied his motion for mistrial, we address his argument as one questioning the admissibility of evidence.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion, which occurs when the ruling is contrary to the logic and effects of the facts and circumstances before it, or when the trial court has erred on a matter of law. Tolliver v. State, 922 N.E.2d 1272, 1278 (Ind. Ct. App. 2010), trans. denied. Even where the trial court has erroneously admitted evidence, we will not reverse the judgment where the error is harmless. Ind. Trial Rule 61; Tolliver, 922 N.E.2d at 1278. Error is harmless where there is substantial independent evidence of guilt such that there is no substantial likelihood that the erroneously admitted evidence contributed to the conviction. Tolliver, 922 N.E.2d at 1278 (citing Cook v. State, 734 N.E.2d 563, 569 (Ind. 2000)).

Davis argues that Detective Simpson's testimony, which opined that the white powder found in the kitchen at 920 Negley was cocaine, was inadmissible under Evidence Rules 701 and 702. Rule 701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Ind. Evidence Rule 701. "[T]he testimony of an observer, skilled in an art or possessing

knowledge beyond the ken of the average juror may be nothing more than a report of what the witness observed, and therefore, admissible as lay testimony." Vasquez v. State, 741 N.E.2d 1214, 1216 (Ind. 2001).

"Experts may testify to opinions based on inadmissible evidence, provided that it is of the type reasonably relied upon by experts in the field." Evid. R. 703. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact," Evid. R. 704(a), though a witness may not opinion as to "intent, guilt, or innocence in a criminal case." Evid. R. 704(b). However, "[t]he opinion of someone sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence." Vasquez, 741 N.E.2d at 1216. Thus, in Vasquez the Indiana Supreme Court affirmed the defendant's conviction for glue sniffing; while acknowledging that chemical analysis is "perhaps the best way" to establish the identity of a substance, id., the court concluded that "persons experienced in the area may be able to identify cigarette smoke, marijuana, and even toluene" by scent alone. Id. at 1217.

Here, Detective Simpson testified that he could identify the white powdery substance he found in the kitchen of 920 Negley based upon its scent and appearance. Detective Simpson testified that cocaine has an "earthy smell" that he could readily identify from seventeen years of police work, which included thirteen years as a narcotics detective with direct and regular involvement with cocaine-related enforcement activities. Detective Simpson stated that this "earthy" scent was different from the smell of powdered methamphetamine, which he stated smells like ammonia. (Tr. at 160.) He further testified

that he could differentiate cocaine based upon its whiteness, which was brighter than methamphetamine powder. Based upon Detective Simpson's experience and testimony concerning his ability to differentiate powdered cocaine from methamphetamine, heroin, and other powdered narcotics, we cannot conclude that the trial court abused its discretion when it permitted his testimony on the identity of the powder found in Davis's apartment.

Moreover, even if admission of Detective Simpson's testimony was an abuse of discretion, such error was harmless. Kim Early, a forensic scientist with the Indiana State Police crime laboratory, testified that two samples of the powder taken from 920 Negley tested positive for cocaine base, and laboratory reports concerning this testing were admitted into evidence. Several other officers testified that the white powder and residues found in various areas of the home were characteristic of a narcotic. And, as we discuss below, there was other substantial evidence sufficient to support Davis's convictions.

We therefore find no error in the trial court's admission of Detective Simpson's testimony at trial.

<u>Sufficiency of the Evidence</u>

We turn now to Davis's other issue on appeal, whether there was sufficient evidence to support his conviction. Our standard of review in these matters is well-settled. We consider only the probative evidence and reasonable inferences supporting the verdict. <u>Drane v. State</u>, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. <u>Id.</u> We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." <u>Id.</u> (quoting <u>Jenkins v.</u>

7

State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

Here, Davis challenges his conviction for Dealing in Cocaine, as a Class B felony. To convict Davis as charged, the State was required to prove beyond a reasonable doubt that Davis knowingly possessed cocaine with the intent to deliver it. I.C. § 35-48-4-1(a)(2); App. at 90.

Davis contends that there was insufficient evidence to establish his constructive possession of the cocaine in the apartment. Actual possession occurs when an individual "'has direct physical control over the item.'" Massey v. State, 816 N.E.2d 979, 989 (Ind. Ct. App. 2004) (quoting Henderson v. State, 715 N.E.2d 833, 835 (Ind. 1999)). Because Davis did not have actual possession of the cocaine, the State was required to prove that he had constructive possession of the drugs. "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." Iddings v. State, 772 N.E.2d 1006, 1015 (Ind. Ct. App. 2002), trans. denied.

"The State must demonstrate the defendant's knowledge of the presence of the contraband to prove the intent element." Grim v. State, 797 N.E.2d 825, 832 (Ind. Ct. App. 2003). Where the defendant has possession of the premises where contraband is discovered, but that possession is not exclusive, the defendant's knowledge may be inferred from additional circumstances, and he must be "able to reduce the controlled substance to his

8

personal possession." Id. "In a manufacturing type [sic] setting, a defendant's presence does not compel a conviction but it does present a prima facie case of possession." Moore v. State, 613 N.E.2d 849, 851 (Ind. Ct. App. 1993). Additional circumstances that Indiana courts have found to support an inference that a defendant had "'knowledge of the nature of the controlled substances and their presence,'" Gee v. State, 810 N.E.2d 338, 341 (Ind. 2004) (quoting Lampkins v. State, 682 N.E.2d 1268, 1275 (Ind. 1997), modified on reh'g, 685 N.E.2d 698 (Ind. 1997)), include:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

Id.

Here, Davis was arrested in an apartment he occupied with Ingram and in which another individual was also found. Detective Simpson testified that he had twice conducted surveillance of the apartment before obtaining and executing the warrant and had seen Davis come and go several times. He further testified that, on at least one occasion, Davis unlocked the apartment with a key. Davis told police that he had resided in the apartment for a few weeks and that he and Ingram divided the rent obligations between themselves. Detectives found clothing in only two rooms of the house—the upstairs bedroom and the downstairs laundry room—and there was no women's clothing in the upstairs bedroom.

Large sums of cash were found in the upstairs bedroom and on Davis's person. Detectives also found multiple cellular telephones in the residence, including two or three on

9

Davis's person. Detective Heath Stewart testified that drug dealers frequently possess large amounts of cash and numerous telephones. Detective Simpson testified that the purpose of having multiple telephones is to separate customer and supplier communications and to shield the dealer's sources of drugs from police in the event of the dealer's arrest.

Detectives also found a small box containing a plastic bag with some powdered cocaine and silverware with a white powdery residue. The box was plainly visible in the downstairs bedroom behind a set of plastic drawers. There was little other furniture found in the room, and no witness recalled the presence of clothing in the room.

While drugs were not in plain view in the kitchen, the strainer with white residue in it was in plain view, with a small amount of raw cocaine placed in a plastic bag in a cabinet that smelled of cocaine. There was no food in the kitchen, nor much in the way of kitchen utensils beyond the strainer, electric mixer, a measuring cup, and a knife and spoon; many of these items had white powdery residue on them. Also found in the kitchen cabinets were MSM, which Detective Simpson testified is used to "cut" raw cocaine to dilute its strength for street use, and baking soda, which is combined with raw cocaine powder and water to produce crack cocaine.

All together, then, we conclude there was sufficient evidence from which a reasonable fact-finder could infer that Davis had constructive possession of the cocaine in the apartment for purposes of manufacturing and selling the drug.

**Conclusion**

The trial court did not err when it admitted into evidence a detective's testimony

10

identifying a white powder as cocaine based on the detective's experience and training. There was sufficient evidence to support Davis's conviction for Dealing in Cocaine.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.