**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Dec 04 2013, 5:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN M. HEARD**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ARICK J. PAM, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 82A04-1302-CR-80 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1209-FC-1138

**December 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Arick J. Pam ("Pam") was found guilty by a jury of carrying a handgun without a license,[1] enhanced to a Class C felony because of a prior conviction.[2] He now appeals his conviction raising the following restated issues:

I.      Whether evidence that Pam possessed the handgun was sufficient to support his conviction; and

II.     Whether the trial court violated Pam's right to a speedy trial under Indiana Criminal Rule 4(B) by failing to bring him to trial within seventy days of his request.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In September 2012, Pam and his girlfriend, Lavarshiaya House ("House"), lived together and were expecting a child. On September 11, 2012, Pam drove House's motorized scooter to the Evansville gas station where House worked. Pam parked the scooter outside the front door and went inside. When Pam walked out of the store soon thereafter, police arrested him in connection with a warrant on another matter.[3]

The police then focused their attention on the scooter. Detective Daniel Deeg ("Detective Deeg") of the Evansville Police Department, who was assisting in executing the arrest warrant, questioned House about the scooter. House confirmed that she owned

---

[1] *See* Ind. Code §§ 35-47-2-1, 35-47-2-23(c)(2).

[2] Pam was previously convicted and sentenced in Vanderburgh Superior Court for carrying a handgun without a license in September 2011. *Appellant's App*. at 11.

[3] No evidence was presented at trial that Pam's arrest was made in connection with an existing warrant. During a suppression hearing regarding whether the State could admit the handgun into evidence, the trial court noted that the parties had reached a stipulation, the purpose of which was "to make sure that the evidence that the defendant was arrested for an outstanding bench warrant does not come into the evidence before the jury." *Tr*. at 25.

the scooter, but that Pam had been the one riding it that day. House gave Detective Deeg permission to search the scooter. When asked if there were narcotics or weapons in the scooter, House stated that she was not aware of any. In the storage compartment under the scooter seat, Detective Deeg found a men's extra-large sweatshirt and, under that, a handgun.

That same afternoon, Officer Stacy Spalding ("Officer Spalding") of the Evansville Police Department conducted a videotaped interview with Pam. In that interview, Pam admitted that he had driven House's scooter to the gas station on the day in question, but denied knowing that there was a gun in the storage compartment. *Tr.* at 64, 66. Saying, "[m]y old lady got a gun," Pam suggested that the gun found in the scooter belonged to House. *Id.* at 65. Later in the interview, Pam admitted that he bought the gun the previous night from a "dude named Trey." *Id.* at 67, 71. He also said that he had bought the gun to give to House. *Id.* at 71.

On September 13, 2012, Pam was charged with carrying a handgun without a license as a Class A misdemeanor, and the State filed an information enhancing the charge to a Class C felony due to Pam's previous conviction of carrying a handgun without a license. *Appellant's App.* at 11. During the initial hearing on September 17, 2012, Pam, acting pro se, requested a speedy trial pursuant to Indiana Criminal Rule 4(B). One week later, public defender William Nesmith ("Nesmith") was appointed to represent Pam. The trial court conducted a special hearing on September 28, 2012, at which Nesmith stated that he did not have time to prepare for the trial within the speedy trial time frame; Pam, however, renewed his request for a speedy trial. The trial court set the trial for December 19, 2012,

3

more than seventy days later, and Nesmith did not object.

In a December 18, 2012 hearing, Pam, represented by Nesmith, personally reasserted his right to a speedy trial under both the instant cause number and under "cause number 82C01-1209-FB-01122" (a case that is not before this court). *Tr.* at 134(1).[4] Pam also requested a continuance. The trial court noted that, because Pam was represented by counsel, it could not entertain his motion. However, the trial court allowed the attorneys for both parties to explain their view of whether the court was complying with speedy trial rules and concluded, "Okay, I'm satisfied then that we're proceeding under the speedy trial rules." *Id.* at 132(2).[5]

At a second hearing on the same day, the State, over Pam's objection, filed an amended information that changed the language in the charging information from carrying a handgun "in or upon defendant's person without a license," to carrying a handgun "in a vehicle or upon defendant's person" without being licensed to carry a handgun. *Id.* at 138; *Appellant's App*. at 10, 12. The trial court advised Pam that he would be granted a continuance of trial due to the amendment, but Pam indicated that he did not want a continuance; instead, he wanted to proceed to trial. *Tr.* at 142. Also during that hearing, Nesmith made an oral motion to suppress the handgun found in the storage compartment of the scooter. *Id.* at 141.

---

[4] There is a mistake in the numbering of Volume II of the transcript. The pages are numbered 131, 132, 133, 134, and then back to 131, 132, 133, 134, etc. For clarity, a reference to the first set will be followed by "(1)" and a reference to the second will be notated with "(2)." For example, *Tr.* at 134(1), refers to the first of the two pages numbered 134. While *Tr.* at 132(2) refers to the second of the two pages numbered 132.

[5] *See* footnote 4.

4

On December 19, 2012, just prior to the commencement of trial, the trial court denied Pam's motion to suppress. *Id.* at 31. Pam again raised the concern that his speedy trial rights had been violated; the trial court, however, noted, "I don't think his speedy trial rights have been violated." *Id.* at 35. At trial, Detective Deeg and Officer Spalding testified for the State, and House testified for Pam. A jury found Pam guilty of carrying a handgun without a license as a Class A misdemeanor. Pam entered a plea of guilty to the enhancement; this changed Pam's conviction to carrying a handgun without a license as a Class C felony. *Appellant's App.* at 5. The trial court sentenced Pam to four years executed. *Id.* at 28. Pam now appeals. Additional facts will be added where needed.

## DISCUSSION AND DECISION

### I. Sufficiency

Pam contends that the State presented insufficient evidence that he was in possession of a gun. When we review the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Cox v. State*, 937 N.E.2d 874, 879 (Ind. Ct. App. 2010) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)), *trans. denied*. "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane*, 867 N.E.2d at 146. When confronted with conflicting evidence, we must consider it in a light most favorable to the conviction. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

In order to convict Pam under Indiana Code section 35-47-2-1, the State was

5

required to prove beyond a reasonable doubt that Pam "carr [ied] a handgun in any vehicle or on or about [his] body . . . without being licensed." Ind. Code § 35-47-2-1(a). Pam concedes that neither he nor House had a license to carry the handgun. *Tr.* at 117. Additionally, Pam acknowledges that: (1) the handgun was found in the scooter; (2) House owned the scooter; and (3) Pam was the last one to drive the scooter. *Appellant's Br.* at 6. Pam argues that there was insufficient evidence that he had either actual possession or constructive possession of the gun. *See Deshazier v. State*, 877 N.E.2d 200, 204 (Ind. Ct. App. 2007) (carrying handgun conviction requires proof that defendant had actual or constructive possession of handgun), *trans. denied.*

Pam did not have the gun on his person when he was arrested, therefore, the State could only have proven that Pam had constructive possession of the handgun. *See Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011) (person actually possesses contraband when he has direct physical control over it). When proceeding on a theory of constructive possession, the State must show that the defendant had "both the intent and capability to maintain dominion and control over the [handgun]." *Deshazier*, 877 N.E.2d at 205 (citing *Bradshaw v. State*, 818 N.E.2d 59, 62-63 (Ind. Ct. App. 2004)). Such a showing inherently involves showing the defendant had knowledge of the handgun's presence. *See id.* (citing *Grim v. State*, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003)).

Pam urges this court to reverse his conviction based on the following evidence: (1) House's admission that she owned the scooter and drove it the night before the handgun was found, *Appellant's Br.* at 11 (citing *Tr.* at 38, 83-84); (2) House's testimony that she was the one who wrapped the handgun in the sweatshirt and placed it in the scooter without

6

Pam's knowledge, *id*. at 12 (citing *Tr*. at 84); and (3) that House never told Pam the location of the gun. *Id*. (citing *Tr*. at 84). Pam claims that the State presented no evidence to contradict House's version of the events. We disagree.

Here, the State introduced evidence that House owned the scooter and that Pam was in exclusive possession of the scooter on the day in question. *Tr*. at 39, 64, 68. Detective Deeg testified that, at the gas station, House claimed to have no knowledge of a weapon or narcotics being inside the scooter and consented to Detective Deeg's search of the scooter. *Id*. at 39. While this was in direct conflict with House's testimony at trial that she did not give her consent to the search, the State put House's credibility into question when it introduced evidence of House's potential bias arising from her relationship with Pam, *i.e.*, House is Pam's live-in girlfriend and is pregnant with his child. *Id*. at 93.

Pam admitted that he bought the gun from a "dude named Trey," *id*. at 69, the night before police found it, and later, he said that he bought the gun for House. *Id*. at 71. House said that Pam paid for the gun in advance, but since she did not want Pam to bring it to her, she picked up the gun in Oakdale from a guy she did not know. *Id*. at 85. House testified that after she purchased the handgun, she had Pam come to Oakdale to look at the gun's serial number. *Id*. at 91. Later, in response to a question from the jury about what House meant when she said she was "going to get [the] serial number checked out," House said that she was planning to take the gun to the "Civic Center" or call the police "out to [her] house to have them check it." *Id*. at 95, 96.

Detective Deeg found the handgun in the compartment under a sweatshirt that House admitted belonged to Pam. *Id*. at 84. House, however, testified that she had been

7

wearing the sweatshirt the night the gun was purchased and that she was the one who wrapped the gun in the sweatshirt. *Id.* While House maintained that she bought the gun for the protection of herself and her children, she also claimed that she placed the gun in the storage compartment of the scooter. *Id*. at 90-91. Additionally, when asked when she purchased the gun, House could not remember until prompted by her attorney. *Id*. at 84.

The jury also heard House's admission that, when she called the police station and learned that Pam "was getting locked up" for carrying the handgun, House "did not tell [the officer], by the way, that's my gun and [Pam] didn't know it was [in the scooter]."[6] *Id*. at 94. Finally, the State pointed out to the jury that the gun, a large revolver, was much too large of a gun for House who the State described as a "small woman," to buy for her personal protection. *Id*. at 115. In closing, the State reminded the jury about the difference between direct evidence and circumstantial evidence. *Id*. at 110. Pointing out the contradictions in the testimony, the State instructed the members of the jury to believe the witness or witnesses they deem most worthy of credit and to disbelieve those least worthy of credit. *Id*. at 129.

Here, there was sufficient evidence for the jury to infer that Pam purchased the gun, placed it with his sweatshirt in the storage compartment of the scooter, and was in constructive possession of the handgun as he drove the scooter to the gas station. Pam's argument on appeal is essentially a request that we reassess the credibility of the witnesses

---

[6] In closing, the prosecutor also stated, without objection, "[House] waited three months to tell anyone that she put the gun in the storage compartment of the scooter or moped, she waited three months to say that, she waited three months to tell you that in this courtroom, she waited three months to say, she did that without [Pam's] knowledge . . . ." *Tr.* at 114.

and reweigh the evidence. This we cannot do. *See Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011) (we do not reweigh evidence or judge credibility of witnesses).

## II. Criminal Rule 4(B) Discharge

Pam also contends that his right to a speedy trial was violated because he was not brought to trial within seventy days of making the request, as required by Indiana Criminal Rule 4(B). "We have previously held that a defendant waives review of a speedy trial request on appeal 'if he does not make a motion for discharge or motion for dismissal prior to trial.'" *Parker v. State*, 965 N.E.2d 50, 52 (Ind. Ct. App. 2012) (quoting *Hampton v. State*, 754 N.E.2d 1037, 1039 (Ind. App. 2001), *trans. denied*), *trans. denied*. There is no indication in the record before us that Pam moved for discharge or dismissal prior to trial.[7] Therefore, his claim is waived.

Waiver notwithstanding, we conclude that Pam's right to a speedy trial was not violated. Indiana Criminal Rule 4(B) provides, in relevant part as follows:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. . . .

The purpose served by Criminal Rule 4(B) is to prevent a defendant from being detained in jail for more than seventy days after requesting an early trial. *Parker*, 965 N.E.2d at 52 (citing *Williams v. State*, 631 N.E.2d 485, 486 (Ind. 1994)). Pam bases his argument on

---

[7] In his brief, Pam contends that he moved for dismissal prior to trial. At the December 18, 2012 hearing, Pam did argue that his rights to a speedy trial had been violated; however, he did not specifically request that he be discharged. *Tr.* at 134(1).

9

his pro se request for a speedy trial, made at the initial hearing on September 17, 2012. *Appellant's App*. at 7. However, on that date, the trial court also set a readiness conference for October 17, 2012, a holding date for October 29, 2012, and an omnibus date for November 30, 2012. *Id*. While the November 30, 2012 omnibus date fell seventy-four days after Pam's initial request for a speedy trial, Pam did not object.

One week later, public defender Nesmith was appointed to represent Pam. On September 28, 2012, the trial court conducted a special hearing during which Nesmith stated that he did not have time to prepare for the trial within the speedy trial time frame; Pam, however, renewed his request for a speedy trial. The trial court set the trial for December 19, 2012, again a date outside the Criminal Rule 4(B) speedy trial seventy-day window, and Nesmith did not object. The CCS also contains the following notation, which was entered on October 2, 2012:

> STATE BY DPA C. COOLEY. DEFT, ARICK PAM, IN PERSON, IN CUSTODY AND BY COUNSEL, W. NESMITH. DEFT REQUEST BOND REDUCTION. STATE OBJECTS. COURT DENIES BOND REDUCTION. *TRIAL DATE IS AFFIRMED*.

*Appellant's App*. at 6. The record before us contains no notation that Nesmith objected to the trial date being affirmed for a date outside the seventy-day window.

While acting pro se, on September 17, 2012, Pam requested a speedy trial. Therefore, the seventieth day from the date of that motion was November 26, 2012. After Nesmith was appointed, he told the court on September 28, 2012 that he could not be ready for trial within the seventy-day window under Criminal Rule 4(B). *Id*. at 7. The trial court

10

followed Nesmith's timeline when it set the trial for December 19, 2012.[8] Pam claims that his counsel failed to take Pam's rights into account and simply ignored Pam's rights by stating that counsel could not be ready for trial. *Appellant's Br*. at 15. We have held that with respect to seeking a speedy trial, a defendant speaks to the court through his counsel. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). "To require the trial court to respond to both defendant and counsel would effectively create a hybrid representation to which defendant is not entitled." *Id*. Thus, when Nesmith requested a trial date of December 19, 2012, he was speaking for Pam; that request effectively waived Pam's request for a speedy trial. The trial court did not violate Pam's right to a speedy trial under Criminal Rule 4(B).[9]

Affirmed.

ROBB, C.J., and RILEY, J., concur.

---

[8] In explaining how the trial date was set, Nesmith, referring to the two pending charges stated as follows:

> I was appointed to this in September and I made a rather lengthy statement that day in Mr. Pam's presence that I could not prepare cases with D felonies and C felonies within the time frame of a speedy trial rights, which had been some time in the middle of November, and that day we set these cases both at the earliest date that I had open on the calendar for my trial schedule on days when I was sure I could try the case, not behind other cases, I heard from Mr. Pam last night that he's not satisfied with that . . .

*Id*. at 132(2). The trial judge concluded, "Okay, I'm satisfied then that we're proceeding under the speedy trial rules." *Id*.

[9] Pam's arrest was made in connection with a warrant on another charge. Additionally, Pam had a pending probation revocation charge. While it is not pertinent to the resolution of the Criminal Rule 4(B) discussion, we note that it is not clear from the record before us whether Pam was incarcerated in connection with one, two, or all of these charges.

11