Anthony HENDERSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S05–9908–CR–440.

Supreme Court of Indiana.

Sept. 1, 1999.

---

Mark Small, Marion County Public Defender Agency, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

How close to someone else's licensed handgun can you get before the law deems you to be "carrying" it without a license? The evidence in Anthony Henderson's case showed proximity, but no apparent action to exercise dominion over the gun. This was insufficient to sustain his conviction. We therefore reverse.

### Facts and Procedural History

On July 5, 1997, Anthony Henderson was riding home from a barbeque in a car driven by his friend Jamal Finch. About fifteen minutes after leaving the party, Officer Robert Neeley of the Indianapolis Police Department stopped the car. The car's "hydraulics" had been in operation and had apparently caused the rear bumper of the car to fall below the required height of

twenty-four inches.[1] Neeley approached the vehicle. As Neeley shone his flashlight into the car, Finch told him that there were guns in the vehicle. The officer could see a semi-automatic pistol on the transmission hump in the middle of the car and the handle of a revolver under the front passenger seat. Finch owned both guns and had a permit for each.

Henderson was charged with carrying a handgun on or about his person without a license. After a bench trial, the court found him guilty of carrying the firearm, a misdemeanor. Henderson then admitted a prior violation, making the offense a class C felony. The Court of Appeals affirmed. *Henderson v. State*, 709 N.E.2d 752 (Ind.Ct.App. 1999). We grant transfer.

## I. Indiana's Handgun Statute

■ The Indiana Code section under which Henderson was charged is relatively broad. It provides that "a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." Ind.Code Ann. § 35–47–2–1 (West 1998) (emphasis added).[2]

The relative breadth of this language led us long ago to the conclusion that it encompasses more than moving about with a firearm attached to one's body. *See, e.g., Woods v. State*, 471 N.E.2d 691 (Ind.1984) (handgun hidden under dashboard was "carried"). The language chosen by our legislature thus never generated here an energetic textual debate such as that conducted in *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), on the meaning of the words Congress used to enhance drug-trafficking penalties when the offender "uses or carries a firearm."[3]

■ The liberality of the Indiana text has nevertheless obliged us to examine the sort of evidence adequate to demonstrate that a defendant "carried" the weapon. We have approached this task, and the similar question of "possessing" drugs, by characterizing the possession of contraband as either actual or constructive. *Woods*, 471 N.E.2d 691. Actual possession occurs when a person has direct physical control over the item. *Walker v. State*, 631 N.E.2d 1, 2 (Ind.Ct.App. 1994). Constructive possession occurs when somebody has "the intent and capability to maintain dominion and control over the item." *Id.* We suggested in *Woods* that knowledge is a key element in proving intent:

> When constructive possession is asserted, the State must demonstrate the defendant's knowledge of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the

1. Neeley explained: Hydraulics allow a car "to be manipulated up or down, left or right. At the time I first observed the vehicle it was leaning down." (R. at 92.)

2. This statute thus prohibits both carrying a handgun on or about one's person and carrying a handgun in a vehicle. To convict for carrying a handgun in a vehicle, the State must prove: (1) the defendant had control over the vehicle, (2) the unlicensed handgun was found in a vehicle, and (3) the defendant had knowledge of the weapons' presence. *Woods*, 471 N.E.2d at 693. Presumably, Henderson was charged with carrying the revolver under his seat, inasmuch as it was the only weapon offered into evidence.

3. As the century nears its end, it is apparent that the competing opinions in this 5–4 decision represent one of the great textualist moments of our period. Justice Breyer's majority opinion, 118 S.Ct. at 1913, divines the ordinary meaning of "carry" through reference to the *Oxford English Dictionary*, *The King James Bible* (2 Kings 9:28, "[H]is servants carried him in a chariot to Jerusalem."), and Melville's *Moby Dick*, among a host of sources. Justice Ginsburg's dissent, 118 S.Ct. at 1920, counters through reference to *Black's Law Dictionary*, *The New English Bible* (2 Kings 9:28, "His servants *conveyed* his body to Jerusalem." (emphasis hers)), and the television series M\*A\*S\*H, among others. The prevailing view held that a firearm may be "carried" in many ways, say, by "packing a gun" in one's belt or by transporting it in the glove compartment.

Any list of great textualist moments would necessarily include Judge Frank Easterbrook's disquisition exploring whether—and ultimately concluding that—the term "mower" used in Wisconsin's statute exempting certain farm implements from execution, adopted in 1935 when many such instruments were simple horsedrawn cutters, covers the substantial mechanized piece of equipment sold in the 1980's as a "haybine." *Matter of Erickson*, 815 F.2d 1090 (7th Cir.1987).

defendant's knowledge of the presence of the contraband.

*Woods*, 471 N.E.2d at 694 (citations omitted). Proof of dominion and control of contraband has been found through a variety of means: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Carnes v. State*, 480 N.E.2d 581, 586 (Ind.Ct.App.1985). Henderson was convicted of non-exclusive constructive possession upon proof of, at most, two of the above circumstances: proximity and plain view.

The circumstances surrounding this case suggest a question of first impression: whether one can have constructive possession of a firearm when someone else has legal, actual, and simultaneous possession of the same weapon. We rarely encounter possession cases in which anybody on the scene actually has a lawful permit. It leads us to examine whether knowledge and proximity are always enough in instances of constructive, non-exclusive possession.

## II.   Other Cases Like This One

The opinion in *Klopfenstein v. State*, 439 N.E.2d 1181 (Ind.Ct.App.1982), is informative for today's purposes. In that case, an officer approached a vehicle shortly after midnight and saw two shotguns in plain view—one in the driver's area of the front seat and one across the laps of two passengers in the back seat. *Id.* at 1184. He also observed a pistol fall out of the front seat of the car when the passenger in the front seat exited the vehicle. *Id.* As he searched the car, the officer saw the butt of a pistol under the driver's seat. The police arrested Klopfenstein, the driver of the car, and he was later convicted of carrying a handgun without a license, among other things. *Id.* at 1183.

The court recognized that the mere presence of a passenger in an automobile is not sufficient to establish his control and dominion over the contraband. *Id.* at 1184–85. It

concluded that since Klopfenstein was the driver, however, his dominion and control over the vehicle supported an inference of his dominion and control over the gun. *Id.* at 1185. The court derived this reasoning in part from an analogous case concerning constructive possession of drugs rather than weapons. *Id.* (citing *Phillips v. State*, 160 Ind.App. 647, 313 N.E.2d 101 (1974)).

This Court used a similar analysis in an exclusive possession setting. In *Woods*, 471 N.E.2d 691, the defendant owned a car and loaned it to a friend. About twenty-four hours after borrowing the car and while in possession of it, Woods' friend was killed. *Id.* at 692. Woods retrieved his car. Some four days after the death of his friend, the police stopped Woods in the vehicle and subsequently searched the car. *Id.* During the search, the police found a handgun hidden under the dashboard and live ammunition compatible with the gun on the front seat. Woods was convicted of illegal possession of a handgun. We held that Woods' undisputed control over his own car for four days was sufficient to establish his exclusive dominion over the gun. *Id.* at 694. We also noted that, had we accepted Woods' contention that his friend's possession of the car four days earlier rendered Woods' possession non-exclusive, the compatible ammunition on the front seat was among additional circumstances establishing his constructive possession. *Id.*[4]

In *Taylor v. State*, 482 N.E.2d 259 (Ind. 1985), a strikingly similar case, we affirmed a conviction involving constructive possession of a firearm. The police stopped a vehicle that had just run through a red light. Two men (one of them Taylor) exited the vehicle as an officer approached. Upon inspecting the car the police found two firearms—a revolver and a semi-automatic. Both were in plain view with one gun in the middle of the front seat and the other on the floor directly in front of the front passenger seat. Neither man had a permit for either weapon. Taylor testified that he had been in the car for about fifteen minutes and did not know of the

---

4. Police found yet another gun hidden in the same location when they stopped Woods while

he was awaiting trial on the charges that were the subject of the appeal.

presence of either gun in the car. Relying on *Woods*, we concluded that Taylor had constructive possession. *Taylor*, 482 N.E.2d at 262. We noted that Taylor "had primary control over the .45 lying between his feet and was in the best position to gain actual control of the weapon[,] ... but it would be difficult, if not impossible, for the driver to reach." *Id.* at 261.

In *Hoffman v. State*, 520 N.E.2d 436 (Ind. 1988), this Court sustained a conviction for carrying a handgun without a license. In that case, the police stopped three suspected burglars (one of them Hoffman) and found three weapons in their car. None of the men had permits for the weapons. We thought it persuasive that each of the weapons were found under a respective passenger's seat. The Court held that the jury could have reasonably inferred that each passenger had discarded his weapon under his respective seat once the police stopped the vehicle and asked the occupants to exit. *Id.* at 437.

In *Person v. State*, 661 N.E.2d 587 (Ind.Ct. App.1996), an officer stopped a vehicle for running a stop sign. As he approached the car, he noticed a passenger in the left rear seat. He saw the passenger reach behind his back for no apparent reason. *Id.* Fearful of his safety, the officer ordered the passenger, Person, out of the car. *Id.* at 589. As Person alighted, the officer noticed a semi-automatic weapon on the rear seat. *Id.* Person was convicted of unlicensed possession of a handgun. The Court of Appeals agreed that the facts presented a number of circumstances supporting constructive possession. *Id.* at 590. Person was in close proximity to the weapon and had made a furtive gesture that suggested he was trying to hide the firearm. *Id.* It affirmed.

In *Cole v. State*, 588 N.E.2d 1316 (Ind.Ct. App.1992), an officer stopped a vehicle driving erratically. During his investigation, he received a radio dispatch describing a "getaway" car in a recent robbery. The car he had stopped matched the description. *Id.* at 1317. He discovered a revolver on the floorboard behind the driver side seat. Cole, a passenger in the front seat, was convicted of robbery, criminal confinement, and carrying a handgun without a license. The Court of Appeals reversed in part, agreeing with Cole's assertion that the evidence was insufficient to sustain his handgun conviction. The fact that Cole was a passenger in the front seat of a car in which a firearm was found on the driver's side back floorboard was held insufficient to support the inference that Cole had possessed the firearm. *Id.* at 1319.

The rationale behind *Cole* was reiterated in *Walker*, 631 N.E.2d 1. In *Walker*, an officer found a handgun in the trunk of a car he had just pulled over. The Court of Appeals reversed, emphasizing that a conviction for "carrying" required proof "that the defendant had an unlicensed handgun on his or her person." *Id.* at 2. The court held the evidence that Walker was a passenger in the front seat of a car with a handgun in its trunk insufficient to support the inference that Walker had at one time carried the weapon on his person. *Id.*

### III. How Does the Case Law Fit Henderson?

From this abundance of case law that involves constructive possession in a vehicle in which other people are present or have been present, we derive a few general conclusions applicable to today's task.

■ While mere presence in a vehicle with multiple riders and multiple weapons is not sufficient, a driver who has a gun at his feet in plain view may be convicted of carrying the gun. *Klopfenstein*, 439 N.E.2d at 1184.

■ For reasons that seem easier to grasp, a driver who had access to and control of the car for several days may be deemed to carry the weapons in the car, even though the car had earlier been used by a friend. *Woods*, 471 N.E.2d 691.

■ When a car has multiple passengers, each with a gun at his feet, and no one has a license for any of them, a jury can find them all guilty of carrying. *Hoffman*, 520 N.E.2d 436. Just a step away analytically, when a car has multiple passengers, a gun near a backseat passenger and no permit, the jury can infer possession by that passenger, especially when the testimony indicates that the passenger tried to hide the weapon. *Person*, 661 N.E.2d 587.

**838**

A passenger in the front seat, without more, is not deemed to possess a gun located on the floor behind the driver. *Cole*, 588 N.E.2d 1316. And a passenger is not deemed to carry a gun located in the trunk. *Walker*, 631 N.E.2d 1.

### Conclusion

The ultimate question is whether there is substantial evidence to prove beyond a reasonable doubt that passenger Henderson "carried" the handgun. To be sure, he knew it was at his feet and could have picked it up. On the other hand, driver Jamal Finch owned the gun, had a permit for it, and was likewise within reach of the gun. Without evidence of any movement or action to suggest Henderson exercised dominion, we conclude the evidence was insufficient to sustain his conviction.

Accordingly, we reverse.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.