**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 12 2014, 9:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH KILPATRICK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1402-CR-105 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1208-FB-1485

**November 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Kenneth Kilpatrick (Kilpatrick), appeals his conviction for theft, a Class D felony, Ind. Code § 35-43-4-2(a).

We affirm.

## ISSUE

Kilpatrick raises one issue on appeal which we restate as follows: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his conviction.

## FACTS AND PROCEDURAL HISTORY

On June 21, 2012, Anderson Police officers were dispatched to the 2600 block of Morton in Madison, Indiana, to investigate an argument between a man and a woman. As the officers drove through the location where the argument had been reported, they did not see anyone. However, a short while later, the officers received another call and were informed that the man in question hid while their patrol vehicle drove by. Based on that information, the officers returned to the location and found the man matching the description, later identified as Kilpatrick, arguing with a woman. Upon seeing the officers, Kilpatrick fled from the scene but was later found hiding behind a trash bin. Although he resisted arrest, the officers were able to subdue and apprehend him.

Concurrent with Kilpatrick's pursuit, other officers were dispatched to a home approximately one block from where Kilpatrick had been arrested to investigate a burglary. The house that had been broken into belonged to Cora Hileman (Hileman), and several

electronic items including a television, an Xbox console, controllers, a remote control, a candle, and a black sheet from Hileman's bed (Items) had been stolen. In addition, an air conditioning unit had been ripped out of one of her windows. Hileman informed the officers that she had not given anyone permission to enter her home.

After inspecting the surrounding homes, Officer Trent Chamberlain (Officer Chamberlain) noticed an air conditioning unit leaning against a house next to Hileman's house. He knocked on the door of the house and spoke with Kristen Dempsey (Dempsey). Dempsey, Kilpatrick's girlfriend at the time, informed Officer Chamberlain that, earlier, she and Kilpatrick had been arguing about the origins of the air conditioning unit. Also, Dempsey informed Officer Chamberlain that Kilpatrick might have obtained the air conditioning unit because she had a heart problem requiring her to stay in a cool area. Upon a further search of the area, Officer Chamberlain found the rest of Hileman's missing Items behind a shed that was between Hileman's and Dempsey's house. Hileman later identified the air conditioning unit, and the other Items stolen from her house.

On August 8, 2012, the State filed an Information, charging Kilpatrick with Count I, burglary, a Class B felony, I.C. § 35-43-2-1(b)(i), and Count II, theft, a Class D felony, I.C. § 35-43-2(a). On December 12, 2013, a jury trial was held. At the close of the evidence, the jury returned a not guilty verdict on the burglary count but a guilty verdict on the theft charge. On January 1, 2014, the trial court sentenced Kilpatrick to an executed sentence of three years in the Department of Correction.

Kilpatrick now appeals. Additional facts will be provided as necessary.

3

DISCUSSION AND DECISION

Kilpatrick claims there was insufficient evidence to convict him of theft. When we review whether there is sufficient evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Wright v. State*, 828 N.E.2d 904, 905 (Ind. 2005). The trier of fact, not this court, must decide the weight of the evidence and the credibility of the witnesses when it determines whether the evidence sufficiently proves each element of the crime. *Id.* We must affirm if the probative evidence and reasonable inferences drawn therefrom support the jury's verdict. *Id.*

Where circumstantial evidence is used to establish guilt, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence. *Klaff v. State*, 884 N.E.2d 272, 274-75 (Ind. Ct. App. 2008) (quoting *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000), *trans. denied*). We need not determine whether the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence; rather, we determine whether inferences may be reasonably drawn from that evidence that support the verdict beyond a reasonable doubt. *Id.* at 275.

Here, in order for the jury to find Kilpatrick guilty of theft, the State was required to prove beyond a reasonable doubt that he knowingly exerted unauthorized control over the air conditioning unit and other Items taken from Hileman's home with the intent to deprive Hileman of any part of their value or use. *See* I.C. § 35-43-4-2.

4

Kilpatrick argues that the evidence was insufficient to sustain his theft conviction because the State failed to present any evidence that he actually possessed the stolen items. Also, he argues the State relied on Dempsey's coerced statement that she saw Kilpatrick with the air conditioner on the day it was reported missing. We disagree.

We recognize that the case at bar relates to a conviction decided on grounds of constructive possession because Kilpatrick did not actually possess the stolen items at the time of his arrest. Possession can either be actual or constructive. *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind. 1997). Actual possession is defined as the intent and capability to maintain dominion and control over the item. *See id*. To prove intent, there must be additional circumstances supporting the inference of intent to maintain dominion and control. *Id*. Capability is established when a defendant is able to reduce the stolen items to his personal possession. *See id*. Constructive possession may also be proven by a defendant's incriminating statements, attempted flight or furtive gestures, or the comingling of contraband with other items the defendant owns. *Henderson v. State*, 715 N.E.2d 833, 835-36 (Ind. 1999).

On the day of the burglary, Kilpatrick was close to the crime scene. He had been arguing with Dempsey as to the origins of the air conditioning unit. When the police officers arrived at the scene to quell an argument between the two, Kilpatrick bolted. This court has previously considered flight to be circumstantial evidence of a defendant's guilt. *See Steen v. State*, 987 N.E.2d 159, 163 (Ind. Ct. App. 2013), *trans. denied*. It is arguable that when the officers returned to the location for the second time to deal with the domestic

5

disturbance, Kilpatrick's escape was linked to the theft and was not because he was arguing with Dempsey.

While at Dempsey's residence, the police found the air conditioning unit torn from Hileman's house leaning against the outside wall of the home. At trial, Dempsey admitted that Kilpatrick "might have brought" the air conditioning unit because she had a heart problem and was under a doctor's orders to stay in a cool area. (Transcript p. 170). She also testified that when Kilpatrick brought the air conditioning to her home, they argued about its origins. Kilpatrick's intent and capability to maintain dominion and control over the air conditioning unit can be based on the fact that he placed it outside Dempsey's home. Though not his home, but his girlfriend's house, Kilpatrick lived there from time to time. To a degree, Kilpatrick's intent and capability to maintain dominion and control of the other missing Items could also be inferred by the fact that they were in close proximity to the air conditioning unit. Moreover, when Officer Chamberlain located the air conditioning unit, Hileman positively identified it as hers. Also, Hileman identified the remaining Items hidden behind a shed that was probably "fifteen [] to twenty [] yards" away from her house, and was close to Dempsey's house. (Tr. p. 192). Furthermore, when Kilpatrick and Dempsey were being interrogated at the police station, Kilpatrick yelled through the walls of the interrogation room, "don't tell them anything. I love you baby." (Tr. p. 207).

Lastly, we reject Kilpatrick's claim that "Dempsey was subjected to pressures and threats of prison if she didn't give testimony against" him. (Appellant's Br. p. 5). On the

6

day of the burglary, Dempsey was transported to the police station for further questioning. Dempsey was read her *Miranda* rights and thereafter voluntarily signed a waiver. The record shows that when Officer Chamberlain first interrogated Dempsey at her house, Dempsey stated that she saw Kilpatrick place the air conditioning unit outside her house and they argued about its genesis. Also, Dempsey stated that she believed Kilpatrick brought the air conditioning unit since she was under a doctor's orders to stay in a cool house. At the police station, Dempsey's story changed. At that point, Officer Chamberlain employed scare tactics because Dempsey had retracted her previous statements. Once Officer Chamberlain told Dempsey that she would go to prison for sixteen years, Dempsey reverted to her original statements. We note that Dempsey had not been charged with anything, and the ploy used by Officer Chamberlain was acceptable under the circumstances. "[S]ubterfuge, trickery, and deception can be acceptable interrogation tactics." *Hartman v. State*, 988 N.E.2d 785, 790 (Ind. 2013). "Various interrogation techniques—'good cop, bad cop,' providing a morally acceptable answer, blaming the victim, and bargaining—do not necessarily create an involuntary statement." *Wilkes v. State*, 917 N.E.2d 675, 681 (Ind. 2009), *cert. denied*. Given all of these considerations, we conclude that the interrogation method used on Dempsey did not overcome her will but only rendered voluntary statements.

Based on the foregoing, we conclude that there was enough circumstantial evidence to infer constructive possession of the stolen goods. Thus, we conclude that evidence of

probative value exists from which the court as the trier of fact could have found Kilpatrick guilty beyond a reasonable doubt of theft as a Class D felony.

CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to support Kilpatrick's conviction for theft.

Affirmed.

MATHIAS, J. and CRONE, J. concur