## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 09 2015, 5:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.B.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner*

June 9, 2015

Court of Appeals Case No.
49A02-1410-JV-757

Appeal from the Marion Superior Court.
The Honorable Marilyn Moores, Judge.
The Honorable Gary Chavers, Magistrate.
Cause No. 49D09-1404-JD-828

**Baker, Judge.**

[1] D.B. appeals after he was adjudicated delinquent for committing an offense that would have been Carrying a Handgun Without a License,[1] a class A misdemeanor, had it been committed by an adult. D.B. raises two arguments on appeal, one of which we find dispositive: D.B. contends that the evidence is insufficient to support the adjudication. We agree, and reverse.

## Facts

[2] D.B. was sixteen years old in March 2014. On March 7, 2014, Indianapolis Metropolitan Police Department Officer Kenneth Kuntz observed a young man, later identified as an individual named D.P., begin charging another young man "in a fighting manner," in the parking lot of a fast food restaurant. Tr. p. 11. Officer Kuntz exited his vehicle and told D.P. he needed to talk with him. The officer then observed a blue vehicle quickly back up in the parking lot. D.P. jumped into the backseat of the vehicle behind the passenger seat, and the vehicle drove away.

[3] Officer Kuntz began following the vehicle, which was being driven by D.B., eventually turning on his lights to signal D.B. to pull over. D.B. pulled over within a reasonable amount of time after the officer turned on his lights.

[4] While Officer Kuntz spoke with D.B., Officer Dustin Carmack spoke with D.P. D.B. produced an Indiana temporary driver's permit and D.P. refused to

---

[1] Ind. Code § 35-47-2-1.

provide any identification. Both officers asked D.P. to step out of the vehicle. After the backseat door was opened and as D.P. was stepping out, Officer Kuntz noticed a handgun sticking out from under the front passenger seat into the rear floorboard of the vehicle, between D.P.'s feet. As Officer Kuntz pulled the gun out, a second gun slid out from under the front passenger seat.

[5] After the officers found the guns, Officer Carmack asked D.B. to exit the vehicle, and both D.B. and D.P. were seated on a curb and handcuffed. Officer Carmack stood behind them and watched as Officer Kuntz completed a search of the vehicle. Officer Carmack overheard D.B. ask D.P. "if he was going to take the gun . . . , and telling [D.P.] that he had a gun charge." *Id.* at 61. Although both guns were tested for fingerprint and DNA evidence, no physical evidence resulted that linked D.B. to either weapon. *Id.* at 43.

[6] On April 30, 2014, the State filed a petition alleging D.B. had committed acts that would be class A misdemeanor carrying a handgun without a license and class A misdemeanor dangerous possession of a firearm had the acts been committed by an adult. On September 18, 2014, the juvenile court held a fact-finding hearing. At the close of the hearing, the juvenile court adjudicated D.B. a delinquent for carrying a handgun without a license and found that the second count merged into the first. On September 30, 2014, the juvenile court held a dispositional hearing and ordered D.B. committed to the Department of Correction until the age of twenty-one, for at least twelve months. D.B. now appeals.

# Discussion and Decision

[7]   Although D.B. makes two arguments on appeal, we find his argument that the evidence is insufficient to sustain his adjudication to be dispositive. When the State seeks to have a juvenile adjudicated as a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *M.S. v. State*, 889 N.E.2d 900, 901 (Ind. Ct. App. 2008). In reviewing a juvenile adjudication, we will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

[8]   D.B. was found delinquent for committing an act that would be class A misdemeanor carrying a handgun without a license. Indiana Code section 35-47-2-1(a) provides that subject to certain exceptions not at issue in this case, "a person shall not carry a handgun in any vehicle . . . without being licensed under this chapter to carry a handgun." Indiana Code section 35-47-2-23 provides that a person who violates section 1 of the chapter commits a class A misdemeanor.[2]

---

[2] These statutes were modified with an effective date of July 1, 2014; in relevant part, Indiana Code section 35-47-2-23 was repealed and relocated to be subsection (e) of section 35-47-2-1. As D.B. committed the alleged offenses herein prior to July 1, 2014, we will apply and cite to the earlier versions of the statutes.

[9]     Our Supreme Court has explained that to convict a defendant of carrying a handgun in a vehicle, the State must prove that the defendant either actually or constructively possessed the handgun. *Henderson v. State*, 715 N.E.2d 833, 835-36 (Ind. 1999). It is undisputed that in the instant case, D.B. did not have actual possession of the handguns. We turn, therefore, to the concept of constructive possession. The *Henderson* Court has described this concept as follows:

> Constructive possession occurs when somebody has "the intent and capability to maintain dominion and control over the item." *Id.* We suggested in *Woods v. State*, 471 N.E.2d 691 (Ind. 1984),] that knowledge is a key element in proving intent:
>
> > When constructive possession is asserted, the State must demonstrate the defendant's knowledge of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband.
>
> *Woods,* 471 N.E.2d at 694 (citations omitted). Proof of dominion and control of contraband has been found through a variety of means: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id.* at 835-36. Turning to the instant case, we consider each of these factors in turn.

*1. Incriminating statements by the defendant.* The State argues that D.B.'s questioning of D.P. as to whether he was going to take responsibility for the gun is an incriminating statement. We cannot agree. This statement was made after the guns were found by the officers, so it establishes no prior knowledge of the weapons' presence in the car. And a mere question to a car passenger as to whether he intended to accept responsibility for a gun, with an accompanied explanation that the speaker has a prior gun charge, does not tend to incriminate the speaker in the possession of the gun.

*2. Attempted flight or furtive gestures.* As soon as Officer Kuntz activated his police lights, D.B. pulled over the vehicle. He made no furtive gestures, and Officer Kuntz testified that D.B. did not seem to be attempting to evade him when he drove away from the parking lot.

*3. Location of contraband in settings that suggest manufacturing.* This factor is not relevant to this case.

*4. Proximity of the contraband to the defendant.* The handguns were underneath the passenger's seat, with the handle of one sticking out into the backseat area. There is no evidence regarding the proximity of the weapons to D.B., who was in the driver's seat. There is no evidence regarding D.B.'s ability to reach back for the weapons.

*5. Location of the contraband within the defendant's plain view.* The handle of one of the handguns was sticking out slightly into the backseat area. The officers were

unable to see the handgun until the door was opened. There is no evidence establishing that D.B. was able to see either handgun.

*6. The mingling of the contraband with other items owned by the defendant.* There was no mingling of the weapons with items owned by D.B.

In addition to all of these factors, we note that it is undisputed that D.B. did not own the vehicle being driven. There is no evidence establishing how long he had been driving it, to what extent the vehicle was actually under his control, or what knowledge he had or should have had of the contents of the vehicle.

It is readily apparent that this record does not support a reasonable inference that D.B. had knowledge of the presence of the handguns in the vehicle. None of the circumstances set forth by our Supreme Court tend to support a claim that D.B. had dominion and control of the handguns. Therefore, we cannot conclude that the evidence supports a conclusion that D.B. carried a handgun in the vehicle. Given this record, we are compelled to conclude that there is insufficient evidence supporting the adjudication.

The judgment of the juvenile court is reversed and remanded with instructions to vacate the adjudication.

Najam, J., and Friedlander, J., concur.