## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 27 2017, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Alfred S. Sanders,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 27, 2017

Court of Appeals Case No.
84A01-1608-CR-1935

Appeal from the Vigo Superior Court

The Honorable Michael J. Lewis, Judge

Trial Court Cause No.
84D06-1508-F6-1776

---

**Vaidik, Chief Judge.**

# Case Summary

[1] Alfred Sanders appeals his convictions for Level 6 felony possession of methamphetamine, Level 6 felony maintaining a common nuisance, and Class A misdemeanor possession of a controlled substance. Sanders argues that the evidence is insufficient to establish that he constructively possessed the drugs. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

[2] Around 6:00 a.m. on July 30, 2015, police officers were executing a search warrant at a house on Green Drive in Lewis, Indiana. While standing in the driveway outside the house, Detectives Charles Burress and Brian Bourbeau, both members of the Vigo County Drug Task Force, saw a single-cab truck start to turn onto Green Drive. Jessica Mahalek was driving the truck, and Sanders was a passenger. Instead of turning, Mahalek "abruptly" continued to drive straight. Tr. Vol. II p. 9. Detective Bourbeau, who was wearing a vest with "POLICE" written in reflective lettering on the front and back, thought this was "strange." *Id.* at 51.

[3] Detective Bourbeau stayed at the house on Green Drive to finish the search, while Detective Burress got into an unmarked police car and followed the truck. Mahalek drove to a house on Washington Street, which was around the block from the house on Green Drive, and parked in the driveway behind two parked cars. When Detective Burress pulled up to the house, Mahalek was just getting

out of the truck while Sanders had "quickly" exited and already walked to the front of the truck, near the rear bumpers of the two parked cars. *Id.* at 36. Detective Burress got out of his car, identified himself, and asked to speak with Sanders; Sanders stopped and walked back toward the truck. Detective Burress then asked Sanders, who lived in Terre Haute, what he was doing in Lewis at 6:00 in the morning, and Sanders responded that he was visiting a relative. Detective Burress then asked Sanders "pointed" questions about whether he was actually heading to the house on Green Drive to buy or sell drugs but then changed course upon seeing the police. *Id.* at 17. Sanders responded that he did not have "anything" on him and that Detective Burress could search the truck, which belonged to him. *Id.* at 20. Sanders and Mahalek then consented to a search of the truck. In the meantime, more officers, including Detective Bourbeau, arrived on the scene. Detective Bourbeau approached Detective Burress and Sanders and told Sanders that he did not believe his story that he was visiting a relative in Lewis at 6:00 in the morning. At this point, Sanders admitted that he was "driving around attempting to find . . . a smoke sack," which is a small amount of methamphetamine. *Id.* at 55.

[4] Detective Bourbeau then searched Sanders' truck. He found a digital scale with methamphetamine residue inside a backpack. The backpack, which was partially behind the passenger seat near the passenger headrest, *see* Ex. F, was visible from the passenger seat. Tr. Vol. II p. 79. The compartment of the backpack containing the digital scale was open. *Id.* at 80. Outside the truck, Detective Bourbeau found a zippered pouch with eleven loose hydrocodone

pills approximately ten feet from where Sanders had stopped when Detective Burress pulled up to the house. The pouch was lying in the grass between the two parked cars. Detective Bourbeau also found two cell phones near some bushes, approximately ten to fifteen feet from the pouch. Although the grass was heavy with dew that July morning, neither the cell phones nor the pouch had any condensation on top of them.

[5] Both Sanders and Mahalek denied ownership of the digital scale with methamphetamine residue, the pouch with the hydrocodone pills, and the cell phones. But when Detective Bourbeau showed the phones to Sanders, he was able to disable the security features by using a multi-directional swipe passcode. Nevertheless, Sanders still claimed that the phones were not his and that they belonged to a friend. Sanders did not explain how his friend's phones ended up near him at a house on Washington Street in Lewis.

[6] Detective Bourbeau decided to arrest Sanders but not Mahalek. When Detective Burress told Mahalek that they were going to arrest Sanders, she became "upset" and "immediately" claimed that the pills belonged to her and that she had a prescription for them. *Id.* at 27. "[S]keptical" of Mahalek's claim, Detective Burress told her that he did not believe she had a prescription for hydrocodone because she was pregnant. *Id.* at 32. Mahalek then "dropped her head" and said "well the scales are mine." *Id.* at 27. But Mahalek was unable to describe the digital scale or tell Detective Burress where it had been located in the truck.

[7] Upon handcuffing Sanders, Detective Bourbeau found "a significant amount" of money in his pockets. *Id.* at 83. Detective Bourbeau also knocked on the door of the house on Washington Street, and an elderly female answered. She was "surprised" and "visibly embarrassed" to speak with the police. *Id.* at 55, 85; *see also id.* at 31 (Detective Burress testifying that despite Sanders' claim that it was his relative's house, the police never received confirmation that Sanders knew the residents).

[8] The State charged Sanders with Level 6 felony possession of methamphetamine, Level 6 felony maintaining a common nuisance, and Class A misdemeanor possession of a controlled substance (hydrocodone). The jury found Sanders guilty as charged.

[9] Sanders now appeals.

# Discussion and Decision

[10] Sanders contends that the evidence is insufficient to prove that he constructively possessed the digital scale with methamphetamine residue and the hydrocodone pills. When reviewing a claim that the evidence introduced at trial is insufficient to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We likewise consider conflicting evidence in the light most favorable to the verdict. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* Instead, we will affirm

the conviction unless no reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

[11] Constructive possession occurs when the defendant has the intent and the capability to maintain dominion and control over the item. *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). Sanders does not dispute that he was capable of maintaining dominion and control over the items. *See Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997) (explaining that the capability requirement is met when the State shows that the defendant is able to reduce the contraband to his personal possession), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind. 1997). Rather, Sanders challenges whether the State proved that he had the intent to do so. *See* Appellant's Br. p. 9 (analyzing only intent prong). To prove intent, the State must demonstrate the defendant's knowledge of the presence of the contraband. *Henderson*, 715 N.E.2d at 835. Knowledge may be inferred from the exclusive dominion and control over the premise containing the contraband. *Id*. But when, as in this case, the defendant's control over the premise is non-exclusive, there must be evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband. *Id.* at 835-36. Examples of such circumstances are: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of contraband like drugs in settings suggesting manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Gray*, 957 N.E.2d at 175. This list is not exhaustive. *Id.*

[12] Although Sanders did not have exclusive dominion and control over the premises containing the digital scale with methamphetamine residue and the hydrocodone pills, the State presented additional circumstances that demonstrated he had knowledge of these items.

[13] As for the digital scale with methamphetamine residue, it was found in Sanders' truck. Sanders, who was a passenger at the time, told the police that he was driving around looking to buy some methamphetamine. Indeed, a significant amount of money was found in Sanders' pockets when he was arrested. The backpack, which was partially behind the passenger seat near the headrest, was visible from the passenger seat. And the compartment of the backpack containing the digital scale was open. Although Mahalek claimed that the digital scale was hers, she initially said that it was not hers and only changed her story when the police told her that they were going to arrest Sanders. Moreover, Mahalek was unable to describe the digital scale or where it had been located in the truck. This evidence is sufficient to prove that Sanders had knowledge of the digital scale with methamphetamine residue.

[14] Regarding the pouch with the hydrocodone pills, when Detective Burress pulled up to the house on Washington Street, Mahalek was just getting out of the truck. Sanders, however, had quickly exited the truck and walked to the rear bumpers of the two parked cars. The pouch was found ten feet from Sanders, lying in the grass between the two parked cars. No other people were in sight, and the top of the pouch was "bone dry" despite the significant amount of dew on the ground that morning. Tr. Vol. II p. 85. In addition, the police found

two cell phones, which were also dry on the top, about ten feet from the pouch. Despite Sanders' claim that the phones did not belong to him, he knew the passcodes. And Mahalek gave wavering statements about ownership of the hydrocodone pills, first claiming that they were not hers, then claiming that they were hers, and last abandoning the claim altogether. This evidence is sufficient to prove that Sanders had knowledge of the hydrocodone pills in the pouch. *See Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) ("[A]lthough it was snowing, the bag was covered by droplets of water and not snow flakes. This evidence was sufficient to support the inference that the bag of marijuana had only been on the ground a short time, and that the bag had been dropped by Womack and no one else."), *trans. denied*.

[15] Affirmed.

Bradford, J., and Brown, J., concur.