## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2017, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark A. Price,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 30, 2017<br><br>Court of Appeals Case No.<br>49A02-1607-CR-1665<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>The Honorable Jeffrey Marchal, Magistrate<br><br>Trial Court Cause No.<br>49G06-1502-F2-4731 |

**Vaidik, Chief Judge.**

# Case Summary[1]

[1] Mark Price appeals his conviction for unlawful possession of a firearm by a serious violent felon. He contends that the State failed to present sufficient evidence that he possessed a firearm and that the trial court committed fundamental error by allowing the State to present and rely on evidence that he remained silent after his arrest. We affirm.

# Facts and Procedural History

[2] At around 3:00 a.m. on February 5, 2015, Indianapolis Metropolitan Police Department Officer John Ly pulled over a Ford Expedition that changed lanes without signaling. Nahamani Sargent was driving the truck, Calvin Tunstall was in the front passenger seat, and Price was in the back seat behind Tunstall. After checking the status of Sargent's license, Officer Ly gave him a verbal warning and told him he was free to go. Sargent sped off and began driving over the speed limit, and Officer Ly followed him and pulled him over again. Officer Ly and Officer Michael Wright approached the truck with guns drawn and ordered the three men to get out. Officer Ly stayed with the three men while Officer Wright and other officers looked in the truck to clear it. Officer Wright saw a revolver protruding slightly toward the rear passenger-side floorboard from underneath the front passenger seat—that is, near where

---

[1] We held oral argument in this case on January 12, 2017, at Ben Davis High School in Indianapolis. We thank the students and staff for their enthusiasm and hospitality.

Price's feet were. A subsequent search revealed the presence of two additional handguns and a rock of heroin under the same seat. Neither Officer Ly nor Officer Wright heard any of the men make any statements about the guns. After the men were transported to a police station, they were advised of their *Miranda* rights and chose to remain silent.

[3] The State charged Price, Sargent, and Tunstall with possession of heroin and carrying a handgun without a license. The State also charged Price and Sargent with unlawful possession of a firearm by a serious violent felon ("SVF"). In April 2016, Tunstall pled guilty to both of the charges against him. Price and Sargent took their cases to a joint jury trial two months later.

[4] During the State's case-in-chief, the prosecutor asked Officer Ly, "At any point did you hear any of the three suspects make any voluntary statements in regards to who owned the gun?" Tr. Vol. II p. 87. Officer Ly answered, "I did not." *Id*. Later, the prosecutor asked Officer Wright, "Did any of the three occupants of that Ford [Expedition] make any voluntary statements as to knowledge of or ownership or possession of the firearm that you saw?" *Id*. at 127. Officer Wright replied, "Not to me. No." *Id*. The defendants did not object to either of the questions or either of the answers.

[5] During his closing argument, Price's attorney repeatedly suggested to the jury that Tunstall's guilty plea (which had been admitted into evidence) constituted an admission that the guns and drugs were his. In rebuttal, the prosecutor

referenced the evidence that none of the three men, including Tunstall, said anything after being ordered out of the truck:

> And then there is Tunstall, the "I'm guilty." Right. If he admits to it then we don't have to worry about it. Right. If that is how everything worked, that only one person has to admit and the rest go free, our laws would be failing us. That's all there is to it. And when does he say it? One of the factors that you guys will be given is incriminating statements. We ask officers, "Did anybody say anything when they got out of that car?" Nobody said a word, including Tunstall. And, in fact, he didn't say a word about his guilt –

Tr. Vol. III p. 42. This prompted Price's attorney to object based on the United States Supreme Court's decision in *Doyle v. Ohio*, 426 U.S. 610 (1976), which restricts the prosecution's use of a defendant's silence. The trial court overruled the objection without explanation, and Price's attorney did not request an admonishment or a mistrial. The prosecutor then resumed her argument, adding that Tunstall "didn't say a word about his guilt until April 15th, 2016. Fourteen months later." *Id.*

[6] The jury found Price and Sargent not guilty of possession of heroin but guilty of carrying a handgun without a license. Both then filed waivers of their right to a jury trial on the SVF charges. When the parties returned to court for the SVF bench trial, the trial court began by addressing a "Motion for Judgment on the Evidence or as an Alternative to Set Aside Judgment and Grant a New Trial" that Sargent filed (and that Price joined) that day. Among other things, the motion asked the court to revisit the claim that the State violated the

defendants' right to remain silent by referencing their post-arrest silence. Sargent's attorney first acknowledged that there was no defense objection when the prosecutor asked the officers whether any of the suspects had made any statements regarding the guns. He argued that the objectionable matter occurred—and noted that the defense did object—during the State's closing argument, when "the Deputy Prosecutor specifically commented and argued that their silence was evidence of guilt." *Id.* at 67. Price's attorney agreed that the objectionable matter arose during the State's closing argument and added that no objections to the initial questions by the prosecutor and answers by the officers were necessary "because one of the elements of constructive possession that the Court instructed is a lack of incriminating statements by a defendant." *Id.* at 73. The trial court denied the defendants' motion without explanation, incorporated the jury trial and the jury's verdict into the bench-trial record, and, after taking evidence of the defendants' serious violent felonies, found both of them guilty on the SVF charges.

[7] The trial court entered judgments of conviction on the SVF counts but due to double-jeopardy concerns did not enter separate convictions on the carrying-a-handgun-without-a-license charges and instead "merged" the jury's guilty verdicts on those charges with the SVF convictions.

[8] Price now appeals.[2]

# Discussion and Decision

[9] Price raises two issues on appeal. First, he challenges the sufficiency of the evidence supporting his conviction. Second, he argues that even if the evidence is sufficient, his conviction should be reversed because the State should not have been allowed to present and rely on evidence that he remained silent after being arrested.

# I. Sufficiency of the Evidence

[10] To obtain a conviction for SVF, the State was required to prove beyond a reasonable doubt that Price possessed a firearm after having been convicted of a crime that qualifies as a "serious violent felony." Price asserts that the State failed to prove that he possessed any of the guns that were in the truck. In reviewing the sufficiency of the evidence supporting a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Wilson v. State*, 39 N.E.3d 705, 716 (Ind. Ct. App. 2015), *trans. denied*. We do not reweigh the evidence or assess witness credibility. *Id.* We consider conflicting evidence most favorably to the verdict. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime

---

[2] Sargent appealed separately. In another memorandum decision issued today, we affirm Sargent's conviction. *See Nahamani Sargent v. State*, No. 49A02-1607-CR-01666 (Ind. Ct. App. Jan. 30, 2017).

proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[11] Where, as here, the State does not allege actual possession, it must establish constructive possession. "Constructive possession occurs when somebody has the intent and capability to maintain dominion and control over the item." *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). Price does not dispute that he was physically capable of maintaining dominion and control over one or more of the guns, so the issue is whether the State proved that he had the intent to do so. To prove such intent, the State must demonstrate the defendant's knowledge of the contraband. *Id.* Knowledge may be inferred from the exclusive dominion and control over the premise containing the contraband. *Id.* But when, as in this case, the defendant's control over the premise is non-exclusive, there must be "evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." *Id.* at 835-36 (quoting *Woods v. State*, 471 N.E.2d 691, 694 (Ind. 1984)). Examples of such circumstances are: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) proximity of the contraband to the defendant, (4) location of the contraband within the defendant's plain view, and (5) the mingling of the contraband with other items owned by the defendant. *Id.*

[12] Price contends that the only circumstance present in this case was his proximity to the guns and that this circumstance, standing alone, is insufficient. We need

not decide whether proximity alone would have been sufficient in this case, because we agree with the State that there was other evidence that a reasonable juror could have found to be incriminating. First, the fact that there were three guns and three men supports a conclusion that each man possessed one gun. Second, the floorboard under the front passenger seat "was a location where the guns could have been quickly and easily stashed during the police pursuit between the first and second traffic stops." Appellee's Br. p. 12. Third, given the fact that the revolver was slightly protruding out toward Price's seat and was visible to Officers Ly and Wright, the jury was entitled to find that it was in plain view. This evidence is sufficient to support the jury's finding of constructive possession.

## II. Post-Arrest Silence

[13] Price also argues that the trial court should not have allowed the State to present evidence that he remained silent after he was arrested or to reference this evidence during its closing argument. *See, e.g., Peters v. State*, 959 N.E.2d 347, 353 (Ind. Ct. App. 2011) ("[P]ost-arrest, pre-*Miranda* silence cannot be used as substantive evidence in the State's case-in-chief."). Because Price did not object when the State introduced the evidence, he must establish that its admission constituted fundamental error. *See Gavin v. State*, 41 N.E.3d 1038, 1042 (Ind. Ct. App. 2015). The doctrine of fundamental error is an extremely narrow exception to the waiver rule that requires the defendant to show that the alleged error was so prejudicial to the defendant's rights as to make a fair trial impossible. *Id*. The defendant must show that, under the circumstances, the

trial judge erred in not raising the issue sua sponte because the alleged error (a) constituted a clearly blatant violation of basic and elementary principles of due process and (b) presented an undeniable and substantial potential for harm. *Id.*

[14] Price must also demonstrate fundamental error with regard to the State's closing argument. While he did object at that time, and the objection was overruled, neither Price nor Sargent then asked for a jury admonishment or a mistrial. Our Supreme Court has held that a defendant must do so in order to preserve for appeal a claim of closing-argument misconduct. *See, e.g., Brown v. State*, 799 N.E.2d 1064, 1066 (Ind. 2003) ("Because Brown failed to request an admonishment or move for a mistrial when the trial court overruled his objection, his claim of prosecutorial misconduct is procedurally foreclosed and reversal on appeal requires a showing of fundamental error.").

[15] Price has not convinced us that the initial admission of the silence evidence was fundamental error. He not only declined to object when the questions were asked and the answers were given but also explained to the trial court that he had a tactical reason for not objecting: "because one of the elements of constructive possession that the Court instructed is a lack of incriminating statements by a defendant." Tr. Vol. III p. 73. In other words, Price intended to argue that his silence was evidence of his innocence. Because this evidence may have worked to Price's benefit, we cannot say that the trial court was required to step in, sua sponte, and exclude it.

We reach the same conclusion with regard to the State's reference to Price's silence during its closing argument. First, the State did not cite Price's silence as affirmative evidence of his guilt during the initial portion of its closing. Second, when the State **did** mention Price's silence during its rebuttal, it was referencing evidence that had come in without objection. And third, when the State noted that "[n]obody said a word" after getting out of the truck, it did so only in response to Price's own closing argument that Tunstall's guilty plea—fourteen months after the traffic stops—amounted to an admission that all of the guns were his. The State did not explicitly contend that Price's silence proves his guilt or that Price "would have said something if none of the guns were his." While it is true that the State easily could have, and definitely should have, made its point about Tunstall's silence without also referencing Price's silence, we cannot say that the limited reference "made a fair trial impossible." *See Gavin*, 41 N.E.3d at 1042.

Affirmed.

Bradford, J., and Altice, J., concur.