## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 31 2018, 10:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Davon Lamont Cummings,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 31, 2018

Court of Appeals Case No.
18A-CR-1774

Appeal from the Marion Superior Court

The Honorable David Hooper, Magistrate

Trial Court Cause No.
49G08-1702-CM-4280

**Brown, Judge.**

[1] Davon Lamont Cummings appeals his conviction for carrying a handgun without a license as a class A misdemeanor. Cummings raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] On the early morning of January 31, 2017, Officer Daniel Majors of the Indianapolis Metropolitan Police Department ("IMPD") observed a grey Buick with one operating headlight and a plate light which was not in operation. Officer Majors pulled the vehicle over, approached it from the rear, and when he was "between five and eight feet away from the car," he observed "the four occupants in the vehicle to be making a lot of movements," which started to make him nervous. Transcript Volume II at 38, 44. He observed the driver, Kiera Hidleburg, "reach back to the back seat of the vehicle," and the front passenger "did not make any movements at all." *Id.* at 38. The rear passenger on the driver's side, who was identified as Ms. Johnson, was "looking back" at Officer Majors and "wasn't moving her hands at all."[1] *Id.* Cummings, the rear passenger on the right side, was "turned towards the center of the vehicle making movements with his hands that [Officer Majors] couldn't see." *Id.*

---

[1] At trial, when asked to demonstrate his observation of Johnson's movements for the jurors, Officer Majors stated "[s]he was looking back at me, but I couldn't tell what her hands were doing." Transcript Volume II at 38.

[3] Upon his approach, Officer Majors detected a strong odor of burnt marijuana coming from inside the vehicle and, being "nervous about the movements in the vehicle," called for backup. *Id.* at 42. While seated, Cummings verbally identified himself when he was asked for identification but did not produce identification. At some point, Officer Majors ordered the occupants to exit the vehicle because he "conducted a probable cause search for the odor of marijuana coming from inside the vehicle and movements." *Id.* at 41. "[D]ue to the movement in the back seat," officers "started with the backseat passengers first and as [they] removed [Johnson] and [Cummings], there was a handgun right there in plain view in the center of the backseat." *Id.* A second handgun sat "under a small purse" but "you could still see it." *Id.* Officer Majors found a third handgun "in a holster inside of [Johnson's] pants." *Id.* Officer Majors arrested Cummings after verifying that he did not have a valid gun permit. Officer Michael Margetson photographed the scene and collected, boxed, and transported the handguns to the southeast district roll call, where he swabbed them for DNA and attempted to collect fingerprints from them.

[4] On February 1, 2017, the State charged Cummings with carrying a handgun without a license as a class A misdemeanor. At the jury trial, Officer Majors was positioned so that he faced away from the jurors and was asked to "demonstrate . . . what movements [he] observed" from the occupants of the

vehicle, including Cummings.[2]  *Id.* at 38.  When the court admitted an aerial diagram of the vehicle, Officer Majors marked where each of the occupants of the vehicle had been seated and was asked to show the location of the handgun in the holster inside of Johnson's pants.  Officer Margetson indicated that he was not able to collect fingerprints from the handguns, the prosecutor asked if that was uncommon, and Officer Margetson stated: "Not off of a handgun because most handguns do not [sic] many smooth surfaces and you really need a smooth surface to get the fingerprint off because the dust will go into the grooves and the little pocket marks in the gun and all you're pulling off is all the dust that came off into that little area."  *Id.* at 54.  A pair of boxes, which each contained a handgun, magazine, and bullets, were admitted without objection as State's Exhibits 4 and 5.  One box, which contained a handgun, magazine, bullets, and a holster, was admitted without objection as State's Exhibit 6, and Officer Margetson indicated that the three handguns were those collected at the scene.  The jury found Cummings guilty as charged, and the court sentenced him to 365 days with 282 days suspended.

## *Discussion*

[5]     The issue is whether the evidence is sufficient to sustain Cummings's conviction for carrying a handgun without a license as a class A misdemeanor.  When

---

[2] During closing arguments, the prosecutor recounted to the jury Officer Majors's testimony and stated: "What did Officer Majors tell you?  What did he see when he was pulling that car over?  He saw [Cummings] make movements sort of passing something over."  Transcript Volume II at 74.

reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[6] Cummings argues that the evidence merely showed that he was a passenger in a car in which the handguns were found, that Officer Majors never observed him in possession of such a weapon, and that it cannot be reasonably inferred that he possessed one. He contends that the most logical inference would be that Hidleburg, as the driver of the car, was in constructive possession of the handguns. In response, the State argues that sufficient evidence supports Cummings's conviction and that, viewed in the light most favorable to the verdict, multiple factors establish his dominion and control over the handguns that were found in the backseat of the car where he was a passenger. Specifically, the State asserts that Cummings was making furtive gestures and that he was in close proximity to the handguns that were found in plain view. It also contends that reasonable inferences support the argument that Cummings had dominion and control over a handgun, and that "[s]ince there were three guns found and three people . . . that were making furtive gestures, a reasonable inference can be made that each gun was controlled by the people making the furtive gestures." Appellee's Brief at 10. It states the fact that Cummings and Hidleburg both did not have valid gun permits while Johnson

did "also supports this inference and the argument that [Cummings] was giving the gun in his control to Johnson." *Id.*

[7] In its February 1, 2017 charging information, the State cited Ind. Code § 35-47-2-1 and alleged that Cummings did "knowingly carry a handgun in a vehicle or on or about his person, without being licensed as required by law." Appellant's Appendix Volume 2 at 16. At the time of the offense, Ind. Code § 35-47-2-1(a) provided in relevant part that a "person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun," and Ind. Code § 35-47-2-1(e) provided in part that a "person who knowingly or intentionally violates this section commits a Class A misdemeanor."[3]

[8] The Indiana Supreme Court held that Ind. Code § 35-47-2-1 is "relatively broad" and "thus prohibits both carrying a handgun on or about one's person and carrying a handgun in a vehicle." *Henderson v. State*, 715 N.E.2d 833, 835, 835 n.2 (Ind. 1999).[4] When referring to the carrying of a gun on or about one's person, the statute proscribes "having on one's person an unlicensed handgun" and conviction of the offense does not require proof that the weapon was

---

[3] Subsequently amended by Pub. L. No. 221-2017, § 1 (eff. July 1. 2017).

[4] In *Henderson*, the Indiana Supreme Court addressed a previous version of Ind. Code § 35-47-2-1, which provided: "a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." 715 N.E.2d at 835.

conveyed or transported from one place to another. *McAnalley v. State*, 514 N.E.2d 831, 834 (Ind. 1987).

[9] In *Henderson*, the Indiana Supreme Court addressed a conviction for carrying a handgun on or about the defendant's person and held that "[t]he liberality of the Indiana text has nevertheless obliged us to examine the sort of evidence adequate to demonstrate that a defendant 'carried' the weapon." 715 N.E.2d at 835. The Court observed that it had "approached this task, and the similar question of 'possessing' drugs, by characterizing the possession of contraband as either actual or constructive." *Id.* Actual possession occurs when a person has direct physical control over the item. *Id.* Constructive possession occurs when a person has "the intent and capability to maintain dominion and control over the item." *Id.* When constructive possession is asserted, the defendant's knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to his knowledge of the presence of the contraband. *Id.* at 835-836. The intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). Proof of dominion and control has been found through a variety of means, including: (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) proximity of the contraband to the defendant, (4) location of the contraband within the defendant's plain view, and (5) the mingling of the

contraband with other items owned by the defendant. *Henderson*, 715 N.E.2d at 836.

[10] The record reveals that, after pulling the vehicle over, Officer Majors approached it from the rear. When he was "between five and eight feet away from the car," he observed "the four occupants in the vehicle to be making a lot of movements," which started to make him nervous. Transcript Volume II at 38, 44. Cummings, the rear passenger on the right side, was "turned towards the center of the vehicle making movements with his hands that [Officer Majors] couldn't see." *Id.* at 38. Hidleburg reached to the vehicle's backseat and Johnson was looking back at Officer Majors. When officers ordered the occupants to exit the vehicle, they started with the backseat passengers first, and as they removed Cummings, a handgun was located "right there in plain view in the center of the backseat" and a second handgun sat "under a small purse" but remained visible. *Id.* at 41. At trial, Officer Majors marked where Cummings sat on an aerial diagram of the vehicle and demonstrated to the jury his movements.

[11] The jury could reasonably infer from the evidence as set forth above and in the record that Cummings had knowledge of a handgun as well as the capability and intent to maintain control over it in light of his movements, his proximity to it, and other factors. Cummings's argument is merely a request that we reweigh the evidence, which we will not do. *See Jordan*, 656 N.E.2d at 816. We conclude that, under these circumstances, evidence of probative value exists from which the jury as a trier of fact could find that Cummings had constructive

possession of the gun and could have found him guilty beyond a reasonable doubt of carrying a handgun "on or about his person" without a license as a class A misdemeanor. *See Grim v. State*, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003) (finding sufficient circumstantial evidence from which the jury could have concluded beyond a reasonable doubt that defendant constructively possessed a handgun found in close proximity to him within a vehicle in which he was a passenger).

## *Conclusion*

[12] For the foregoing reasons, we affirm Cummings's conviction for carrying a handgun without a license as a class A misdemeanor.

[13] Affirmed.

Bailey, J., and Bradford, J., concur.